Jones
vs.
Sommerville.
a Bul. N. P. 284
Beame's P. in
E. 279, 281.

1p 437
136 309

WILLIAM S. JONES vs. ALEXANDER SOMMERVILLE.

*Error from Franklin Circuit Court*—Before the Hon. S. L. PERRY.

Where plaintiff and defendant had covenanted together that defendant should ship his cotton crop to market by plaintiff; that plaintiff should pay off a judgment, in the name of A, against defendant; that plaintiff should retain the amount of that judgment, and 18 per cent. thereon, out of the proceeds of the cotton, if sufficient, and if not that he should receive it out a judgment defendant was to recover against B; that plaintiff should wait for *his account against defendant*, till the proceeds of the cotton were known, out of which he should receive it, if sufficient, and if not, out of the judgment to be recovered against B; and suit being brought on this covenant *for the amount of the account*, it is averred by the plaintiff that defendant had recovered a judgment against him for a breach of the covenant *on his part* (what breach not stated)—that this recovery amounted to more than the proceeds of that portion of the cotton which was shipped; and that the defendant has not paid the account out of the judgment which, it is averred, he recovered against B: This declaration is held to be bad, for want of an averment of performance, or offer to perform, the plaintiff's part of the covenant; the right to recover *the account*, out of a particular fund, *under the covenant*, being *dependent* on such performance.

Sommerville brought an action of covenant against Jones, upon articles of agreement entered into between them, in

Jones
vs
Sommervilie

1823. By this instrument Jones agreed that he would ship his crop of cotton, by Sommerville to New-Orleans, supposed to be one hundred and twenty bales. Sommerville agreed to pay off a judgment which one Davis held against said Jones for two thousand dollars. He was to retain the amount of said judgment out of the proceeds of said cotton, with the further sum of eighteen per cent. on said judgment; the overplus, if any, after deducting the freight, to be paid over to Jones. But if the cotton should not sell for that sum, Sommerville agreed to wait with Jones for the deficit until the money should be collected from P. Cox, by Jones, the claim being then in suit. It was further agreed, in said articles, that Sommerville was to wait with Jones for the amount of his, Jones', account with said Sommerville, until the proceeds of the cotton should be ascertained, and if they should be sufficient to pay off the before mentioned sums, then the overplus should be applied to the payment of said account; but should this not be the case, said account should be paid out of the judgment to be recovered against P. Cox, in the aforesaid suit. These articles of agreement were under the hands and seals of the parties. Sommerville, in his action, avers, that Jones did not ship his entire crop of cotton with him to New-Orleans, but only eighty five bales, the nett proceeds of which amounted to thirteen hundred and seventeen dollars and thirty-three cents, which he admits he has received. He also avers that Jones recovered a judgment against him for a breach of the covenant on his part, (not stating what breach) at April term of the Circuit Court, 1825, for one thousand five hundred dollars. He charges as a breach on the part of the defendant, that he did not pay said account, (which he alleges to be fourteen hundred and fifty dollars,) out of the judgment against P. Cox, the amount of which he avers that Jones had received, and that it amounted to two thousand seven hundred and ninety four dollars twelve and a half cents. He does not aver either a performance, or readiness to perform, any of the covenants on his part.

On this action of covenant, Sommerville obtained a judgment for thirteen hundred and fifteen dollars sixty seven cents against Jones, in the court below. There were six pleas filed by the defendant ; on three of which issues were joined, and to the other three demurrers were filed. These demurrers were sustained by the court below. One of the principal questions presented for the determination of this court, (and the one on which the case is decided) is that of the sufficiency or insufficiency of the declaration.

Jones
vs.
Sommerville

P. MARTIN, for Plaintiff in error.

It is a principle of law, that what is not good in a covenant cannot be cured by averment.   I lay it down also, as correct doctrine, that where an instrument under seal contains many matters of covenant, part of them may be independent, and part of them mutual and dependent.   Here, Jones owed Sommerville an account ; and he agreed to give a higher grade of security, for the payment of what he thus owed, in consideration of Sommerville's paying off a judgment which Davis held against himself (Jones) as executor, and in consideration of further day being given to him.   These covenants are dependent, the one on the other.   Jones did not give this higher security without a consideration for so doing ; and Sommerville, therefore, cannot recover the amount of the account upon the covenant, without averring that he had satisfied Davis's judgment, and also, that he had given further day for the payment of the account:—1 *Chitty*, 309, 310.

The amount of the account, I contend, is not sufficiently described in the covenant to authorise a recovery upon it in this form of action.   The covenant does not show what was the amount of the account.   An averment cannot cure this defect ; because the rule is, that what is ambiguous in a deed cannot be cured by averment.—*Buller's N. P.* 297.

The court erred in sustaining the demurrer to the defendant's second plea.   That plea alleged that all the matters in the second trial, were triable in the first.   There is indeed,

an agreement to that effect of record.  But if that were out of the question, I contend that the covenants are mutual, and the whole subject of controversy was triable in the first action, and if Sommerville did not then urge his claim, it was his own fault.

The demurrer to the fourth plea was improperly sustained. It may perhaps contain surplussage; but enough of it is good to answer the declaration.  It denies owing the account; and this takes away the cause of action.  All surplussage may be stricken out.  A plea is not bad because it contains more than a defence; or because it contains several matters to make up a defence.—1 *Chitty*, 514—3 *Johns*. 69.

I contend that where parties might have litigated all the facts in one action—especially as here, where they agreed to do so—they are bound so to do.  If they do not it is their own fault, and they have no remedy afterwards.  It is like the case of an award.—12 *Johns*. 311.  If Sommerville neglected to bring in his defence in the first case, he cannot afterwards maintain an action for that cause.  The party is estopped.—*Gould's Pleadings*, 477, 478, 479.

It is no answer to say, that the first case went off on demurrer: for the party, indeed, did offer his set off in diminution of damages, and as far as he could establish it, it was allowed.—1 *Stewart*, 244.

At the commencement of this suit, there was no cause of action existing between Jones and Sommerville.  There was then a decree in chancery in favor of Jones, in full force, in which all these matters had been litigated.  True, after suit and judgment, a bill of review was granted.  But Sommerville could not have the right of bringing suit while the decree was in full force.  Then there was no cause of action.  The subsequent proceedings could not cure the error in the commencement of the suit.  A suit cannot be maintained where there was no cause of action at the commencement of the suit, although a cause of action may have arisen during its progress.—1 *Chitty*, 265, 256, *marginal page—Buller's N. P.*

137—*Blackstone's Rep.* 312—5 *Espanasse*, 163—7 *Term* *Rep.* 474.

Jones<br>vs.<br>Sommerville

It was also error, I contend, in the court below, to receive the bill of review as evidence ; because the plaintiff had no right to make evidence for himself.—2 *Stewart*, 276.

In this deed there is no amount specified ; and upon it there could not, therefore, be any legal recovery. But in this case, the court permitted parol evidence, not only to show what was the amount, but also permitted the introduction of accounts of three or four different characters, such as Jones with Sommerville, Jones with Gillespie and Sommerville, and Jones with Gillespie alone. Thus to supply omissions in a deed, is inadmissible.—3 *Starkie's Ev.* 999 to 1006. Latent ambiguities, it is true, may be explained by parol, but patent ambiguities, which appear on the face of the deed, such as I contend this is, cannot be thus explained.—11 *John.* 201, *marginal*—11 *Mass.* 27—4 *Bibb*, 473—1 *Bibb*, 171—15 *Mass.* 92. But in the case before us, the couet permitted the ambiguity in the deed to swallow up various accounts.

It has been held by this court, that where there is written warranty of title, parol proof is inadmissible to prove that the warranty was also intended to apply to soundness.—3 *Stewart*, 140.

If these accounts are to be recovered, I contend that the action must be upon the accounts. Was the execution of this deed an extinction of the action of assumpsit, especially in these accounts of Sommerville and Gillespie, &c. against Jones ? Could we plead this deed in bar to an action on such accounts ? Then this evidence cannot be let in, else there might be double recovery for the same cause of action. The deed could only be a bar in the case of the account between Jones and Sommerville, at most ; but I contend that it could not be a bar even in that case.—See 7 *Cranch*, 299 to 303. The covenant here was only collateral security, and did not merge the assumpsit debt.—14 *Johns.* 404.

Jones
vs.
Sommerville

But these accounts, not only might have been before the jury; they actually were before the jury in the first trial: this appears by the deposition of Coalter. Having been thus before the jury, they cannot be again set up. Accounts once put in litigation between parties, cannot be again brought forward under the same covenant. If the accounts were improperly rejected on the former trial, the law was open; Sommerville might have carried the case up to the Supreme Court.

The court below charged, that when it appeared that some of the accounts, in the general account presented, were passed upon, this was not *prima facie* evidence that the whole of them were before the jury; but that the party wishing to prevent a second litigation of the same matter, must prove not only that the account was presented, but that it was passed upon. This charge was erroneous. There would be no end to litigation, if such a rule were adopted as to the admission of evidence acted on at a former trial. Courts will not permit a party to bring only a part of his open accounts in mitigation of damages, in an action against him, and then bring another action for the rest.

STEWART, on the same side, before the opposing counsel proceeded in the the discussion of the subject, made the following additional references.—1 *Esp. N. P.* 268, 271, 272, 285, 306, 309—*Croke Eliz.* 449, and the opinion of this court (in manuscript) in the case of *McGowen & wife* vs. *Young.*

ORMOND, for Defendant in error.

The principal question to be discussed is, the sufficiency of the averments in the declaration. Whether they are sufficient or not, depends on the character of the covenant. If the covenants in the deed are independent covenants, then there is no necessity to aver performance, to enable either party to maintain an action on the covenants in his favor. Many of the old authorities on this subject, are founded on the phra-

seology of the covenant, and a slight variation in the language would make a covenant dependent or independent. More regard was paid to the language in which it was couched, than to its meaning. But of late years the courts look more to the design and intention of the parties, and give such a construction as accords with the good sense of the instrument.

In the notes to the case of *Prauge* vs. *Cole,* 2 *Saunders*, all the cases are collected with great ability, and certain principles deduced therefrom, by the able commentator.— The first principle is laid down in these words : · " If a day be appointed for the payment of money, or for a part thereof, or for doing any other act, and the day is to happen or may happen, before the thing which is the consideration of the money or other act is to be performed, an action may be brought for the money, or for not doing such other act before peformance, for it appears that the party relied on his remedy, and did not intend to make the performance a condition precedent ; and so it is where no time is fixed for the performance of that which is the consideration of the money or other act." The principle thus deduced is fully sustained by the authorities cited, as an examination of them will show.

In this case, however, as in most others, the dispute is not about the principle, but its application. An analysis of the covenant sued on will show its complete analogy.

In the first place Jones sells to Sommerville his entire crop of cotton, supposed to be one hundred and twenty bales ; and Sommerville covenants to pay a judgment which had been before that time obtained against Jones—Sommerville further covenants to wait with Jones for the amount of an account he had against him, until the sale of the cotton, and any overplus of the nett proceeds of the cotton which might remain after reimbursing himself for the amount of the judgment he had undertaken to pay for Jones, was to go in discharge of the account, and if such surplus were not sufficient, then Jones was to discharge such residue out of a judgment

he expected to obtain against another person, in a suit then pending. To try this question by the rule above laid down, let us enquire whether Sommerville had bound himself by his contract to discharge the judgment against Jones before he could call on Jones for his crop of cotton. If he was, then in the language of the case cited, "the day appointed for the payment of the money was to happen, before the thing which was the consideration of it was to be performed." And first let us inquire when Sommerville was bound by his covenant to discharge the judgment against Jones? It seems to me impossible to read the contract between the parties, without perceiving that they contemplated an immediate payment by Sommerville. It was to relieve himself from the pressure of an execution that Jones entered into the covenant. The eighteen per cent. spoken of in the covenant to be retained by Sommerville, on the amount of the judgment, was doubt-less the per cent. which merchants, whether legal or not, are in the habit of charging for advancing. But we are relieved from all difficulty on this score, by the decision of this court, on this very covenant, in an action brought on it by *Jones* vs. *Sommerville*, for not discharging the judgment against Jones recited in the covenant. The pleadings in the cause present-ed the precise point I am now discussing, and the court deci-ded that Sommerville was bound to discharge the judgment against Jones instantly.

Was Jones by his covenant bound to deliver his crop of cot-ton instantly? To ascertain whether he was or not, let us test his covenant by the plainest rules of common sense. He undertakes to deliver his *whole* srop of cotton—why does he not say how much cotton he had? Simply because he d:d not know. And why did he not know? Because it was not in the condition in which he was to deliver it, viz. in bales. But further, he supposes his crop will amount to one hun-dred and twenty bales. He delivered but eighty five bales, and he alleges that that was his entire crop. Now, such a discrepancy between his supposed and his actual crop, if he

was acting in good faith, and we must presume that he was, could only arise from the fact, that a large portion of the crop was not picked out; had it been, there was a simple rule by which the actual product, in baled cotton could have been ascertained. And if the court can look to the situation of the country, they will know that generally, at the season of the year when this covenant was entered into, from one fourth to a third remains in the field. So far then was Jones from having it in his power to *deliver* his crop of cotton immediately, that he was unable even to estimate it. And this fact must have been known to Sommerville at the time, as is plainly inferable from the covenant itself. For it is inconceivable why Sommerville, when the precise character of the onerous stipulations which he was to perform, were plainly stated in the covenant, should not have required the same certainty in those for his benefit, but from the fact that the cotton was not in a situation to be correctly ascertained, and that considerable time was necessary to ascertain the result in bales.— Would not this have been conclusive reasoning against Sommerville, if on the day after the making of the covenant he had demanded the cotton of Jones, and on his refusal to deliver it, had brought this suit.

If this reasoning be correct, the covenants are independent of each other, and an averment of performance is unnecessary. The declaration however does aver that the account which is sued for in this action has not been paid by Jones, either by the surplus of the cotton, or by the judgment, which in that event Jones agreed should be applied in its discharge, but that Jones had recovered and collected the judgment himself. This averment shows that, according to his covenant, Sommerville waited for his account, and that the contingency had taken place, on the happening of which, the account was to be paid.

HOPKINS, as to the sufficiency of the declaration.—The declaration shows that the clear proceeds of the cotton have

been recovered and paid by Sommerville, and contains an averment that the judgment was recovered by Jones vs. Eldridge, and has been collected by Jones, who has not paid the account due to Sommerville. It is immaterial to the right of Sommerville, to recover upon the covenant to pay the account, whether the covenants to deliver the cotton and pay the judgment of Davis vs. Jones, be dependent or independent. But if it were material to show the character of those covenants, the position could be maintained, that they are independent. When the covenants were made, the judgment in favor of Davis was in existence—it was a debt then due from Jones, which Sommerville covenanted to pay. The moment after the covenants were made, the sheriff might have required payment of the judgment, and then Sommerville was bound to satisfy it. But the obligation to deliver the cotton did not arise immediately after the covenants were made. The covenant to deliver the cotton does not ascertain the number of bales, which it is stated in the covenant, upon supposition, will be about one hundred and twenty. It is obvious from this covenant that the parties understood that the cotton was not ready for market ; and if Sommerville had brought, the day after the date of the covenant, an action for its breach, because Jones had not delivered the cotton, the suit could not have been sustained. It would have been prematurely brought, before Jones had time to prepare his cotton for market ; and the covenant shows that both parties understood, when the covenant was made, that it was not ready for market. But there would have been a breach of Sommerville's covenant to pay the judgment in favor of Davis, if he had failed, upon application made immediately after the making of his covenant, to satisfy it. That such a failure at that time would have been a breach of this covenant of Sommerville, this court determined in an action of Jones against him, upon the covenant.—See 1 *Stewart's Rep.* 345.

As Sommerville might have been required to satisfy the judgment, before Jones with due diligence could have prepar-

ed his cotton for market, the two covenants were independent. But if these two covenants were dependent, it would not affect the right of Sommerville to recover for the breach of the covenant upon which this suit is founded.,

Jones delivered his cotton, and Sommerville failed to pay the judgment in favor of Davis. If the two covenants were dependent, this failure on the part of Sommerville, was a breach of his covenant, and for the breach, Jones's remedy was upon the covenant. He could not have treated the delivery of the cotton as though the covenant had not been made. He could not have recovered the value of the cotton of Sommerville as a trespasser, for Sommerville received the cotton upon a contract. He could not have recovered the proceeds of the cotton in an action against Sommerville for money had and received for the use of Jones, because the violated contract was under seal, and upon it an action of assumpsit cannot be maintained—19 *Johns. R.* 162—1 *Chitty's Pl.* 95, 97.

Jones could not, and did not attempt to abandon the covenant of Sommerville, to satisfy the judgment : he brought an action of covenant against Sommerville for his failure to pay the judgment, in which he recovered damages, which were equal in amount to the clear proceeds of the cotton he had delivered. The damages might have been equal to the amount of the judgment in favor of Davis. The only reason why that judgment was not the measure of damages, must have been that Jones did not insist that it should be. If the damages had been equal to the amount of that judgment, Jones would have been liable to Sommerville for the excess of the judgment over the clear proceeds of the cotton.

Sommerville, after this covenant was made, could not have maintained assumpsit for the account due to him from Jones. Upon the covenant he had a remedy of a different kind—by it, he had bound himself to wait for the account until the judgment against Eldridge should be recovered and collected, if the proceeds of the cotton over the amount of the judgment in favor of Davis, should not discharge it. If Som-

merville, after the delivery of the cotton, and his failure to sa-tisfy the judgment in favor of Davis, had brought assumpsit to recover the account, upon what ground could he have maintained it ? Did the breach of his covenant to pay the judgment in favor of Davis procure his release from his other covenant, to wait for Jones' account with him ? Unless his first breach of covenant justified him in committing another breach of covenant, he could not, after his failure to pay the judgment to Davis, have maintained assumpsit for the account—he continued bound to wait for the account until it should be ascertained that it would be discharged neither from the proceeds of the cotton, ' over the amount of Davis' judgment, nor from the money collected upon the judgment which Jones expected to obtain against Eldridge. The obligation upon Sommerville thus to wait for the account, was created by the covenant, he has complied with the obligation an l has waited for the account as long as the covenant required him to do so. Jones has been benefited by the delay, which was the consideration for his covenant to pay the account out of the proceeds of the cotton, should there be a sufficient excess of the proceeds over the amount of Davis' judgment, or if there should not be such excess, then out of the judgment against Eldridge when it should be collected.— Jones delivered the cotton, and recovered upon the covenant the clear proceeds of the cotton : he has also had the benefit of the delay, which was the consideration for his covenant, upon which this suit is founded. His condition, therefore, when this suit was brought, was precisely the same that it would have been had Sommerville paid Davis' judgment, and into that condition he was placed by his action of covenant against Sommerville. As Jones has had the benefit of the delay, he is liable upon his covenant in this action.

There is nothing in the objection that the declaration contains no averment that Sommerville waited for the account as long as the covenant required. This is not like an action against B, upon his promise to pay the debt of C, if the plain-

tiff would indulge the original debtor during a time, which was agreed upon. In such an action there must be an averment that the plaintiff did give the forbearance to C. In the absence of such averment, although it might appear that the suit against B, was the first action brought against him upon the promise, it could not appear that no suit was brought against C during the time, through which, the forbearance should have been extended. But in this case Jones owed the account, and to him, by the covenant, delay was to be given. This suit was brought because the account had not been paid, and the declaration shows, by proper averments, that there was no excess of the proceeds of the cotton over the amount of Davis' judgment—that Jones had failed to pay the account out of the judgment against Eldridge; although one had been recovered and collected, and that the account is still unpaid. In this case there was no necessity for a formal averment in the declaration, that Sommerville had waited for the account as the covenant required, because this suit and the result, show that the delay was given. If the averment were necessary, the want of it is cured by the verdict.

STEWART, in reply.

The counsel for the defendant in error, made many objections to the pleas. They found much there too, which they contended did not merit serious argument to show that it was no proper defence to their action. They found "men of straw" in the pleas. Perhaps so : but I think we may find men of chaff in the declaration ; and the former are altogether sufficient to stand up against the latter. An immaterial plea is a sufficient answer to immaterial allegations in a declaration.

In order to test the sufficiency of the declaration, we must look into the covenant, and see what are the remedies which may be had upon it. It is contended that the covenants are independent. However this may be, as to the two first sti-

57

pulations, it is not so as to the one on which this suit was brought. The doctrine of dependent and independent covenants, is very ably discussed in 1 *Saunders*, 320, *marginal— note*, 4.

[Here STEWART read, and commented on the doctrine, as laid down in *Saunders*, at considerable length.]

··Formerly courts were governed very much in their decisions on this subject, by technical rules, in regard to the language employed, rather than by the intention of the parties, as collected from the whole instrument. But in modern times, these technicalities have been in a great measure disregarded ; and the grónd object has been to ascertain the intention of the parties, from a fair and reasonaale construction of the instrument. Precise and unvarying rules, it has been said, cannot be applied to every case, but every case must depend, in a great measure, on its own merits, and the good sense of the instrument.

The opposing counsel say that these articles of agreement must be taken as a dependent or independent covenant throughout, and that it will not do·to consider it as in part independent and in part dependent : and yet both parties to the action have treated this covenant as, at least, in part dependent ; if the rule then holds, that it must be altogether either the one or the other, there can be no recovery on that part in relation to the account, without the plaintiff averring performance on his part. In the other action we should have recovered two thousand dollars, if the amount had not been reduced by treating this as a dependent covenant. Can an action be maintained, by the defendant in error, on this covenant, without showing a performance on his part ? They say so in argument ; but the declaration seems to admit the dependent character of the covenant. They do not show this indeed, by any proper averment : they do not aver per-

formance, or an offer to perform ; but they aver that Jones brought suit on the covenant, and recovered damages.

But it is not true that a covenant must be dependent or independent throughout : it may be dependent in part, and independent in part. If A covenants with B, that A shall deliver a negro to B, by the first of May, and B agrees to build A a house by the first of June ; and it is further agreed that A shall purchase the furniture of the house from B, and pay him for the same : this covenant is neither wholly dependent nor independent. As to the agreement to deliver the negro, the covenant is independent, because the act is to be done at a particular time, and before there is to be any performance on the other part ; but as to the other part of A's covenant, it is dependent. He will not be bound to perform it, if the house be not built ; which must be done before it can be furnished and the furniture paid for.

But whether these covenants are to be regarded as dependent or independent, I contend that Sommerville can have no remedy upon this covenant. The rules laid down in regard to dependent and independent covenants have been found to work great injustice to the parties, if not relaxed by regard to the situation of the parties, and the justice of the case. It has therefore been held that, whether the covenants be dependent or independent, when there has been part performance, on the one part, to prevent injustice, cross actions will be allowed. But where there has been no performance, this will not be permitted. That there has been no performance on the part of the plaintiff, is a good defence.—1 *Henry Blackstone*, 273, *note*. According to this doctrine, Sommerville cannot recover in this action. The pleas show that the judgment which Sommerville agreed to pay, he has not paid : and no averment of forbearance has been made by the plaintiff below. There is then no consideration for this covenant, on which suit is brought.

Sommerville has performed nothing. We performed the first act. Our performance was not complete; but the amount of our recovery in the first suit was reduced for that reason. But Sommerville having performed nothing, can have no remedy on the covenant; because the undertaking on our part, whatever it was, must have been without consideration, or it must have been a covenant, the consideration of which has failed.

In the first action, I also contend, the defendant had a right to give in evidence, as per agreement, any failure of performance on our part, in reduction of damages. It is to be presumed that this was done. Sommerville cannot, then, have the benefit of the same defalcation on our part, in another suit.—6 *Binney*, 129—6 *Durnford & East*, 570, *marg.*

Where the covenant of the plaintiff goes to the whole of the consideration, the covenant is dependent, and the plaintiff cannot recover without proving performance.—1 *Henry Blackstone*.

I hold the true doctrine to be, that where there has been no performance, in part or in whole, by the party complaining, when he has performed nothing, and when the time is past when he should have performed, he cannot maintain an action on the covenant. This rule will do justice to all parties; and if there be any case contrary to this, I have not found it.

Such is the case here. The account is not impeached: we do not wish to destroy the indebtedness of Jones under the simple contract; but the goods were not delivered under this covenant; and the question is, whether Sommerville shall have this higher security. For what shall he have it? For forbearance? It does not appear he forebore. It is not averred: and the court cannot take it for granted. Shall he have it for paying off the judgment against Davis? In that he entirely failed. He performed no part of the covenant. He did not even pay off the proceeds of the cotton until the mo-

ney was recovered from him by suit. There is then, clearly no consideration for this covenant on which he brought suit.

The counsel speaks of the hardness of the case as it respects Sommerville. In what does the hardness of the case consist? He got our cotton without making any advance; and we, with some difficulty and expense, got it back. That's all. But let us look for a moment at the situation of Jones. His grand object seems to be an advance of money. He stipulated for an advance greater than the amount of the cotton. He lost the control of the cotton, and got no advance. When an advance is stipulated for, the use of the money may be regarded as the principle object; and Jones, so far from receiving any consideration, on which the agreement on his part should rest, actually sustained an injury by disposing of his cotton, without receiving the advance for which he had stipulated.

According to the doctrine laid down in 8 *Johnson's Reports,* 257, the act of one party may be such as to discharge the other party, in a contract, from any obligation to perform his part of the agreement, whether the covenants be dependent or independent. Here, I contend, that Sommerville's own act exculpated Jones. Sommerville was to pay the two thousand dollar judgment. He was to dispose of the cotton, and if there should be a deficiency, he was to receive pay for that deficiency, and also the amount of the account out of the judgment which Jones expected to obtain against the estate of P. Cox; but it never could appear whether there was a deficiency or not, unless Sommerville had paid the judgment of Davis against Jones.

[The concluding part of Mr. Stewart's argument was not heard by the Reporter; and he has not been able to obtain it for publication.]

By Mr. Justice HITCHCOCK:

This is an action of covenant, brought by Alexander Sommerville against William S. Jones, in the Circuit Court of Frank-

lin county; in which court, Sommerville, at the August term, 1832, recovered judgment against Jones, for the sum of thirteen hundred and fifteen dollars sixty seven cents; and to reverse which judgment, the case has been brought, by writ of error, into this court.

There were six pleas filed by the defendant below, to three of which issues were tendered by the jury; to the other three general demurrers were filed by the plaintiff below, which were sustained by the court, and which, among many others, are assigned for error in this court, and which bring before it, the sufficiency of the declaration, and the construction of the instrument sued on.

This instrument as spread upon the record, is in the following words: " Articles of agreement made and entered into this eighth January, one thousand eight hundred and twenty three, between Alexander Sommerville of the one part, and William S. Jones of the other part, both of the county of Franklin, in the state of Alabama, witnesseth—that the said William S. agrees to ship his crop of cotton, by the said Alexander, to New Orleans, supposed to be one hundred and twenty bales, at the risk of the said William S. The said Alexander agrees and binds himself to pay and discharge a judgment, obtained against the said William S. administrator of H. Cox, deceased, in favor of John Davis, for about two thousand dollars. Out of the proceeds of the said cotton, the said Alexander is to retain the amount of the said judgment, with the further amount of eighteen per cent. on the said judgment, and the overplus of said sale, (if any should be) after deducting the freight, &c. to be paid by the said Alexander to the said William S. But should the cotton not sell for the before mentioned sum, then and in that case, the said Alexander agrees to wait with the said William S. for the deficit, until the money is collected from the administrator of P. Cox, the claim being now in suit, in which case judgment will be obtained in favor of said William S. at next April term of the Circuit Court of this county. It is further understood, that said Alexander is to wait for the amount of the said William S's ac-

count up to the first instant, until it shall be ascertained what the cotton sells for, and should the sale be sufficient to discharge the before mentioned sums, and still be an overplus, the balance to be applied to the payment of William S's account, under the same regulations as before stated, but should there not be a sufficient amount, then to be paid out of the before mentioned claim now in suit. In testimony, &c.

Signed,        ALEX. SOMMERVILLE, Seal.
WM. S. JONES, Seal.

Test, P. MARTIN."

The plaintiff below has brought this action to recover the amount of the account referred to in the above recited instrument, which he alleges to have been fourteen hundred and fifty dollars, and he assigns as a breach on the part of the defendant, the non-payment of the said account, out of the judgment against P. Cox, which he avers to have amounted to twenty seven hundred and ninety four dollars twelve and a half cents, and to have been collected by the defendant. He also avers that the defendant did not ship his whole crop of cotton to New-Orleans by the plaintiff, but only eighty'five bales, the nett proceeds of which he avers to have been thirteen hundred and 'seventeen dollars thirty three cents, which he admits he has received. He does not aver how much more than the eighty five bales the defendant's crop did amount to, and assign that failure as one of the breaches of the defendant's covenant. He also avers that the defendant recovered a judgment against him, for a breach of his part of the covenant at the April term, 1825, of the Circuit Court of Franklin county for fifteen hundred dollars, but does not say in what that breach consisted; he does not aver either a performance or readiness to perform, any one of the covenants on his part of the agreement.

On the part of the plaintiff in error, it is contended that the covenants in this instrument are dependent; that the want of an averment by the plaintiff below, of performance by him of his part of the agreements, is fatal to this action; and that no action will lie on the covenant to recover the amount of the account,

Jones
vs.
Sommerville

the same never having attached, and not being merged in the covenant. ·The plaintiff below and defendant here, insists that the covenants are mutual and independent, has treated them as such in his declaration, and that the amount of his account can properly be recovered in this form of action.

It is admitted that the question of the construction of the instrument is fully presented by the state of the pleadings, for the consideration of the court.

To draw the true line between dependent and independent covenants, has often been a subject of much embarrassment in courts of justice, not so much, it is said, from any peculiar difficulty in the principle which is contained, which seems clear and indisputable, but in the application of the principle to the particular case. The principle as laid down in the elementary books, is, " that when there are several covenants, promises, or agreements, which are independent of each other, one party may bring an action against the other for a breach of his covenants, without averring a performance of the covenants on his, the plaintiff's part, and it is no excuse for the defendant to allege in his plea, a breach of the covenants on the part of the plaintiff. But when the covenants are dependent, it is necessary for the plaintiff to aver and prove a performance of the covenants on his part, to entitle him to an action for the breach of the covenants on the part of the defendant."[a] There are no precise technical words necessary to make a stipulation precedent or subsequent; neither does it depend on the circumstance, whether the claim is placed prior or posterior in the deed, so that it operates as a proviso or covenant, for the same words have been construed to operate as either one or the other, according to the *nature of the transaction.* The contradiction in the determinations has not arisen from a denial, but from a misapplication, of the principle, in the particular instance.[b]

The object which should actuate courts in the construction of this kind, as indeed, of all other kinds, of contracts, is to construe them according to the true intention and meaning of the parties at the time the contract is made. To discover that in-

[a] 1 Saun. 480

[b] 1 Chit. 312.

tention, in relation to the construction of covenants, certain rules have been collected, and which are laid down in 1 *Chitty's Plead-ing*, 313, taken principally from 1 *Saund.* 480.

A brief abstract of these rules may not be out of place in this opinion; and,

1. Covenants are independent when a day is appointed for payment, by the defendant, of money, or for his doing any other act, and such day is to happen *before* the thing which is the consideration of the defendant's contract, was to be performed, because it appears that the defendant relied upon his remedy, and did not intend to make the plaintiff's performance a condition precedent.

2. But covenants are dependent, when the day appointed for the performance of the defendant's contract is to happen *after* the time when the consideration of the defendant's contract is to be performed; in such case the plaintiff must perform his act, before he can sustain his action, and such performance must be averred.

3. When the plaintiff's covenant constitutes only a part of the consideration of the defendant's contract, and the defendant has received a partial benefit, and the breach on the part of the defendant can be compensated in damages, the covenants shall be held independent, and an action may lie to recover damages, without averring performance by the plaintiff. The defendant having received a part of the consideration for his agreement, it would be unjust, that he should enjoy that part without paying for it, because he had not had the whole. In this case, however, the plaintiff must aver performance of at least a part of that which he covenanted to do, or that the defendant has otherwise had a partial benefit.

4. But when mutual covenants constitute the whole consideration on both sides, they are mutual conditions, the one precedent to the other, and performance must be averred.

5. So when two acts are to be done at the same time, on a day named or generally, by the opposite parties, neither can

58

Jones
vs.
Sommerville

maintain an action without showing performance, or offer to perform, or at least a readiness to perform, though it is not certain which of them was obliged to do the first act.

And 6th. When there are mutual promises and agreements, yet if one thing be the consideration of the other, then the plaintiff's performance must in general be averred. There are, however, some cases, says Mr. Chitty, where it has been *decided* that when it appears that the defendant relied rather on the plaintiff's *agreement* to perform his act, than his actual performance of it, it is not necessary to aver his performance.

With a view then to construe this contract " according to the meaning of the parties and the good sense of the case," let us look into its object and terms.

Jones, it appears, at the time of this contract, was indebted in the sum of about two thousand dollars, as executor of one Cox, to one Davis, he was also indebted by account to Sommerville, to what amount does not appear by the instrument, these sums were due, and one of them in judgment, and he was in want of money to pay them. He has cotton which must be sent to market, and he has a claim in suit against one P. Cox, upon which he expects to get judgment in about four months. In this situation, he applies to Sommerville to advance him the money to pay the judgment, and to give him time on the amount of his account; and to secure him, and also to induce him to make the advance, he agrees to ship his cotton to New Orleans, which he supposes will amount to one hundred and twenty bales, through Sommerville, to pay him eighteen per cent. on the amount of the advance to be made, and to give him a lien on the suit pending against P. Cox, in case the proceeds of the cotton shall prove insufficient to reimburse Sommerville in these three sums.

Sommerville agrees to make the advance, to receive and ship the cotton, to delay the collection of the account, and to look to the cotton and the claim against P. Cox, to reimburse himself, for the advance, the eighteen per cent. and the amount of the account; these are all the stipulations on either side to be done or forborne; no day is fixed for either party to perform his part of

the agreement, but each is to perform his act " generally," and it may be proper here to remark, that this court, at a former time in a suit in favor of *Jones* vs. *Sommerville*, for a breach of his part of the covenant, in not paying the amount of the judgment against Jones in favor of Davis, held, that by the terms of the contract, he was bound to pay it " *in presenti*." The same terms being used in the covenant as to the delivery of the cotton by Jones, it must be subject to the same rule of decision, and there- fore, he was bound to deliver the cotton " *in presenti*." By which I understand, that each act is to be done as soon as may be, to accomplish the object of the parties, and as the nature of the case will admit. In the case of the money *instanter*, or when demanded, and in the case of the cotton, as soon as, by the cus- tom of the country, it should be ready for market.

These two things being then to be done " *in presenti*" or " generally," and the residue of the stipulations on each side being necessarily contingent upon the performance of these two, it is proper to inquire under which one or more of the rules be- fore adverted to, this contract properly falls.

It will not, I apprehend, be contended that it comes under ei- ther the first or second rules, as in the first, the money to be paid, or the thing to be performed, is to be at a day, *before* the consideration of the other is to be performed, and in the other, it is *after* the day : here they were both to be performed " *in pre- senti*," at the same time.

Does it fall under the third rule of construction ? Did the plain- tiff's covenant here constitute only a part of the consideration of the defendant's contract ? Has he received a practical benefit from its performance ? And can he be compensated in damages for the failure to perform the balance ? All these must be an- swered in the affirmative, to bring the case within this rule.— What part of the contract then has the plaintiff performed ? It is not contended that he paid the judgment of Davis, or that he offered, and was prevented by Jones. Was this the moving con- sideration of the contract ? or was the delay in the payment of the account ? and is that delay, which is not alleged as part per-

Jones
vs.
Sommerville

formance, a sufficient benefit to authorise the plaintiff to recover in this action, and drive the defendant round to his cross action to recover damages for the non-payment of the judgment to Davis. One would hardly suppose that the new delay in the payment of an open account, which at most, could only save Jones the cost of a suit, would have induced him, when he had a judgment of two thousand dollars hanging over him, to place his cotton in Sommerville's hands, and agree to pay eighteen per cent. on the amount of the judgment, then pay the judgment himself, and expect to look to Sommerville for damages to remunerate himself. What rule of damages known to such contracts could compensate him? Suppose his property had been sacrificed at the sheriffs' sale, could the courts give him damages over and above the amount received by Sommerville from the sale of the cotton? This would be the measure of his damages, because it would be the only rule applicable to the contract. He could not then be compensated in damages. The benefit then to be derived from the delay would not be sufficient, and the damages would be inadequate, neither being sufficient, and both being requisite. It cannot, therefore, fall within the third rule.

The illustration of this rule, put in *Saunders*, is, that A, by deed, conveyed the equity of redemption of a plantation in the West Indies, with a stock of negroes to B, in consideration of £500, and an annuity of £160 for life of A, and covenanted that he had a good title to the plantation, and was lawfully possessed of the negroes, and B covenanted that A, well and truly performing all and every thing therein contained, he would pay the annuity. In an action for the annuity, the breach assigned was, that A was not lawfully possessed of the negroes. The plea was held ill, because by this defence, the want of title in any one negro would bar the action, and it would be unreasonable to allow B to keep the plantation and still refuse to pay for it, because he might not have a good title to every negro. For this he could be compensated in damages. But suppose A had no title to the plantation, and to only a part of the negroes, would B have still been held to his

covenants, though he had lost the benefit of his contract, for which he could not have been compensated in damages? If Sommerville had paid the amount of the judgment, and had sued Jones for the non-delivery of the cotton, and Jones had pleaded that Sommerville had not waited for his account, there might be some analogy between such a case and the case of the plantation, as there the benefit, though not to the full extent of the covenants, would have been partial, and Jones could be compensated in damages for the breach in the event of delay, and Sommerville having, by the payment of the money, entitled himself to it, and to the eighteen per cent., could not be compensated, except by sustaining the contract. But to admit that though he had refused to make the advance, which was the principal and moving inducement of Jones to make the contract, yet in as much as he had delayed suing on his account, he should still be entitled to the benefit of the contract, would be violating the good sense of the case, be returning to the technical distinctions which have been repudiated in modern decisions, and be encouraging the making of covenants, for the express purpose of breaking them. Again, to entitle a party to recover under this rule, he must allege in his declaration that part of the consideration which he has performed. But Sommerville has not here alleged either payment of the money, an offer to pay, or forbearance of the collection of his account; but has contented himself with averring the non-payment of his account, out of the money collected of P. Cox, when the contingency upon which alone he was entitled to payment out of that fund, had never attached to the covenant, it having been defeated by his own non-performance of the very act, (to-wit, the payment of the judgment against Cox,) which alone gave him a right in the last resort, to look to that fund; for it can hardly be contended that his averment that Jones had recovered a judgment for the proceeds of the cotton, is to be held as one of the benefits growing out of the contract.

The three remaining rules all embrace cases of dependent contracts, under which it is considered this contract properly comes, and that it refers itself directly to the fifth rule. By this rule, when two acts are to be performed on the same day or generally, and it is not certain which is to do the first, each is bound to perform his act before he can recover for a breach of the other. In this contract, two acts are to be performed, one by each, and both *in presenti,* and it is not certain, that is, it is not expressed in the contract, which is to do the first act, therefore neither can aver a breach on the part of the other, without first averring performance of that which he was to do himself. Had Sommerville paid the judgment of Davis against Cox, he would on the failure of Jones to deliver the cotton, have entitled himself to the benefit of all the stipulations in his own favor, and for this he had only to wait a reasonable time. But if the construction contended for by the counsel for the defendant in error, be correct, if the parties here " looked rather to the *agreement* than the *performance* of it," then by waiting the same time, Sommerville could have recovered without paying a dollar, his commissions on the sale of the cotton, his eighteen per cent. on the amount of the judgment, (unless indeed the statute of usury could be interposed,) and the amount of his account, and possibly his eighteen per cent. upon that, a proposition too monstrous to be entertained by a court sitting for the administration of justice.

That Sommerville contemplated this result when he entered into the contract, is hardly possible ; that Jones did not, is morally certain ; that he delivered eighty five bales of cotton is admitted, and that Sommerville retained the proceeds until they were recovered at law, is not denied ; that he advanced any part of the judgment of Davis against Cox, is not contended, and that because he did not offset his account in the action of Jones for the recovery of the proceeds of the cotton, can have any bearing upon the construction which this court is to give of the contract, will not be contended.

When time is essential in the performance of a contract, and the party has failed to perform, the opposite party may consider the contract as abandoned. Here, Sommerville had failed to pay the money as he had stipulated to do, and Jones had a right to consider him as having abandoned the contract, and if so he had no right to an appropriation of the judgment against P. Cox, the non-payment of which to satisfy the account is assigned as the breach, and Jones having sued for the recovery of the proceeds of the cotton thereby acquired in that abandonment, and though Sommerville afterwards delayed suing for his account until after the judgment against P. Cox was realized, he connot be said to have done so under the covenant, , it was a voluntary delay which he was not bound to make, for which he paid no consideration under the covenant, and from which he can derive no benefit at this time : so far from asserting any right under this alleged delay, it appears that he received the cotton, sold it, and appropriated the proceeds (and which in fact amounted to more than his account) to his own use, or applied it to the satisfaction of the account, and it is only since he failed in that appropriation, by the success of Jones in the suit brought by him, has he thought of resorting to this covenant, and putting up the breaches assigned in this declaration.

The case of *Weaver's adm'r* vs. *Childress*, decided in this Court at the January term, 1831, has been cited by the counsel for the defendant in error, as sustaining their view of this case. In that case Childress made a covenant, in July, 1819, by which he sold a tract of land in Tennessee to the plaintiff's intestate for eight hundred and fifty dollars, one half to be paid the first of January, 1820, and the balance a year thereafter, when he was to make a good title in fee simple ; and he covenanted to put the plaintiff's intestate into possession on or before January, 1820. In 1826 suit was brought for the purchase money, and an averment was made that the defendant was put into possesssion of the premises according to the terms of the covenant, and he also averred

Jones
vs.
Sommerville

a readiness to convey the lands according to the covenant. The defendant pleaded—

1. That the plaintiff below was not ready on the first of January, 1820, to make the conveyance; and 2. That on the day aforesaid, the plaintiff had not a good title to the lands in question; nor had he such right at the date of the contract or the commencement of the suit. On demurrer to these pleas, it was held by this court, that the contract came under the first and third rules of construction, laid down above. It is said by the court, " that the terms of the covenant that the intestate should pay Childress one half of the purchase money twelve months before the title to the bond was to have been conveyed, and at the same time the former should receive possession of the land, is considered a full indication of the intention of the parties that their respective covenants should be mutual and independent, and that each relied on his legal remedy in case of failure. If they did not, why was the vendor to receive half the consideration money, long before the title was due? Why was it agreed that the vendee should have possession before the title? And why did he accept it, and continue to retain it? The presumption is, that the possession for several years was of considerable value, and that the vendee has had the benefit thereof. But if the vendor was entitled at any time to his action, for part of the purchase money, that circumstance would appear decisive of the principle that the covenants are independent."— With that decision the court is still entirely satisfied, and they cannot perceive the analogy between it and the present case.

It was suggested in argument by the counsel for the defendant in error, that in this and all the previous suits in law and chancery, which have grown out of this contract (and it seems to have been a fruitful source of litigation,) the judges, counsel, and parties, had invariably regarded these covenants as independent. Whatever may have been the case in this respect heretofore, the point is now distinctly presented to

the court, and must receive its decision. The object of its creation is to adjudicate upon cases which have undergone previous investigation, and with a view to the correction of errors.

Jones
vs.
Sommerville.

The court has, however, looked into the record with a view to discover in what way this point may have been disposed of before. It does not appear what were the views taken by the Judges who granted and dissolved the bill of Sommerville for an injunction against the judgment of Jones, no reasons appear to have been given, and therefore, no inferences can be drawn; neither does it appear upon what reasoning the bill of review was granted. The Judge, however, who gave the final decree in the bill of review, does express his opinion : we have, however, looked in vain for his reasoning on that point : he says, "It is clear that equity had no jurisdiction of the case made out in the complainant's bill. The covenants contained in the agreement between the parties were independent, and the complainant, for a breach of the covenants in his favor, had an adequate remedy at law." Had the Judge expressed the views which brought him to that conclusion, they would have received the respectful consideration of this court.

In looking however, into the suit by Jones v. Sommerville, we find that the declaration, after setting out the contract expressly, avers that, " in pursuance of said covenant, he had delivered his crop of cotton amounting to eighty seven bales, weighing twenty nine thousand nine hundred and ten pounds of cotton, charges the defendant with the breach in not paying the judgment in favor of Davis, and the measure of damages appears to have been the nett proceeds of the cotton.—This declaration is in strict accordance with those required in actions upon dependent covenants, and it is difficult to conceive how he could have sustained his action without those averments. Had it been otherwise, however, and were that case now before this court for argument and decision, with-

59

out those averments, as this is, it would have presented the singular aspect of two parties having gravely entered into covenants involving large amounts, requiring simultaneous and immediate performance on each part, each of whom had violated the covenants, each prosecuting the other for such violation, and in order that each should recover, it would be necessary for both to admit, that it was neither intended or expected, that either would perform what he had voluntarily stipulated to do ; in such cases there would be little left for the court to do but to say that both had abandoned the contract as soon as made, and that neither was entitled to any action against the other.

In every aspect in which a majority of the court has been able to view this case, they have been led to the conclusion that the covenants are dependent ; that for the want of the necessary averments of performance by the plaintiff below, of any of his covenants, there is no legal cause of action set forth in the declaration, and therefore, that the judgment below must be reversed.

As this view disposes of the whole case, the court has not investigated any of the other points made in argument.


By Mr. Justice THORNTON:

It is my misfortune to have arrived at a different conclusion in this case, from that just announced, in the opinion delivered by a majority of the court. As a dissenting opinion does not contain the law of the country, the Judge entertaining it, need not, except on his own account, be very solicitous as to whether it contain the law of the case or not. I am induced only by my deference to the acknowledged legal abilities of my brethren, to give a brief summary of my view of the character of this covenant ; and of the sufficiency of the declaration, which asserts a cause of action upon it. Sommerville, as I apprehend, was bound *immediately* ; or as this court expressed it, in the case of the present defendant in error, against the present plaintiff,[a] " was bound to pay *in*

[a] 1 Stew. 345.

*presenti,"* by the terms of the covenant, the amount of the judgment in favor of Davis, against Jones as the administrator of Cox. This was, perhaps, the most urgent inducement to the contract between the parties. It admitted of no postponement ; in the nature of the thing no delay was requisite, it being for the absolute payment of a sum of money, ascertained by the records of the country. The performance of this stipulation, I am satisfied was not to be delayed until the shipment, or delivery for shipment, of Jones' crop of cotton. Jones then, could have sued Sommerville for any unreasonable delay in making this payment, without averring as a condition precedent, the performance of any thing on his part. But this is the acknowledged test of the character of the covenant, as to its being dependent or independent. And if Jones could sue Sommerville without making such averment, it would follow of course, that they were mutually independent, and that Sommerville could sue also for a breach on the part of Jones, without averring performance ; for he is in truth, to be considered as having performed, according to the maxim, *qui actionem habet rem recuperandum, ipsum rem habere videtur.* This view of the case can only be resisted, by maintaining, that from the terms of the covenant, Jones' obligation to ship his cotton by Sommerville, was also an obligation to do so *in presenti* ; and that a priority of performance in point of time, was not settled, as attaching to either party. But it seems to me clearly, that Jones' stipulation in regard to the cotton, was of a future nature; and that he ought not to be compelled to aver either performance, or a readiness to perform, in an action against Sommerville, for failing to pay the judgment of Davis. So far from Jones being held by his covenant, to *imm.diate* performance, or readiness to perform at its date, the cotton was recognised possibly as not yet picked out; certainly as not yet in a condition to be shipped; as it was clearly not then baled ; for the parties suppose that there will be one hundred and twenty bales, when afterwards only eighty constituted the crop. Jones

Jones
vs.
Sommerville

may have been delayed in getting ready to deliver his crop of cotton ; and Sommerville may not have been ready to ship it, for some time to come : but surely the judgment in the meantime, should have been paid off, I will suppose then, that by instant process, Jones had recovered the amount of this judgment from Sommerville, he having delayed to pay it until it was levied of Jones ; and that this recovery was had before the shipment of the cotton, which might have been delayed by many circumstances. And suppose further, that Jones had, after all this done, upon demand by Sommerville for his cotton, failed and refused to deliver it up to him for shipment. Could not Sommerville, I ask, sue Jones under this supposed state of case, and recover the value of his crop of cotton, except its excess over and above, what he might then owe Sommerville on every ground of demand? This I presume, will be admitted on all hands. Now, I hold that there is no difference in principle, whether Sommerville had paid this judgment by suit, or voluntarily, or whether he had paid it at all, or not, as he was clearly liable to pay it ; and this liability determines the nature of the covenant, not its discharge, in accordance with the maxim above quoted. In this supposed state of affairs, if the cotton were enough in value to pay all Sommerville's demands, there would be an end of all actions on this covenant. It would be *functus officio*. But if the cotton crop had appeared, from the testimony in the last supposed suit, to have been worth only a part of those demands, then after those suits, which were only to effectuate, what without them, ought to have been done on both sides, the covenant would still be in force ; binding Sommerville to wait for the balance due him, and binding Jones to appropriate towards its extinguishment the proceeds of the judgment against Eldridge. If Sommerville attempted to sue for his account, or for any balance due him before the determination of the suit, and recovery against Eldridge, Jones could plead the subsisting covenant in bar, and defeat such suit ; thus reaping the full benefit of the stipulation for

delay. Surely then, Sommerville, after the recovery from
Eldridge, and the ascertainment of the fact, that there was a
portion of that judgment properly applicable to the payment
of his account, and which Jones refused so to apply, could sue
him on the covenant for that specific breach, and recover the
amount so applicable.

Jones
vs.
Sommerville

This is my view of the rights of the respective parties to
this covenant. As to the particular action now brought upon
it, whether the covenant be considered dependent or
independent, I am unable to perceive any good objec-
tion against it, so far as the declaration alone is considered,
however, the right of recovery mght be affected by facts dis-
closed in the subsequent pleadings. The averments in the
declaration, are of the amount of the proceeds of the cotton
crop of Jones ; the amount of the judgment of Davis, which
Sommerville was to have satisfied ; the amount of money re-
covered by Jones in the suit against Eldridge, and the amount
of the account due from Jones to Sommerville on the first of
January, 1823. It also avers, though not at all material to
the right of action, in my view of the covenant, that Jones
had already sued him on the covenant, and recovered dama-
ges for his failure to satisfy the judgment of Davis. The
breach alleged in the declaration, is the failure by Jones, to
apply the proceeds of the money collected of Eldridge, to the
satisfaction of his account, which is alleged to be still due and
unpaid. By apt averments it is made to appear, that the ex-
cess of money recovered of Eldridge, over and above the dis-
charge of the prior claims to which it was subjected by the co-
venant, is amply sufficient to have satisfied the account. The
pleader very properly treated the covenant in this regard, as
a collateral security for the account mentioned in it. It was
in truth no more than a promise to apply to the discharge of
a separate and acknowledged debt, a certain contingent
fund ; and the criterion of damages for the breach would be,
whatever there was left of this fund, not greater than the ac-
count, after the satisfaction of the previous lien upon it. It

Jones
vs.
Sommerville

was no extinguishment of the account, or of the action upon it, although it superseded such action; for it might so happen, that no breach of the covenant might take place, and yet the acbount be not paid. But if there be no extinguishment of the account, still an action lies for damages on the covenant, which is in the nature of a collateral to it. There may be two suits, but only one satisfaction. Such a construction of this covenant as will maintain the action brought upon it by Sommerville, is necessary to afford all the benefits for which the parties stipulated. Upon any other construction, Sommerville by the first breach of his contract, in not paying Davis's judgment, exonerated himself from all further obligation under the covenant : or else it must be maintained that Sommerville was still bound to wait for his account, though Jones was not bound to do what was the consideration of the delay; which would destroy all mutuality, and inflict a penalty upon Sommerville for his first breach; although he has answered for it, in damages already recovered.

As to the supposed defect in the declaration, in not avering that Sommerville had waited for his account, according to the covenant; if it were necessary to aver this, which I do not admit, it being a matter strictly for defence, yet I deem it as necessarily implied in the allegation, that the account is still due ; as livery of seizen is implied by the allegation of a feoffment.