## RIVES, ADM'R, *vs.* BAPTISTE.

1. Where the payment of money, secured by a penal bond, is made to depend on the performance of a condition precedent, an action cannot be maintained on the bond until the condition has been fully performed.

2. The doctrine in relation to partial performance of mutual covenants which go to a part only of the consideration on both sides, where the part unperformed can be compensated in damages, (Boone v. Eyre, 1 H. Bla. 273, n. a,) has no application to the case of a penal bond for the payment of money on the performance of a condition precedent.

3. Although the courts will not require the performance of every minute particular of a condition, unless its full and exact performance is part of the essence of the contract; yet, where the execution of a trust deed is a condition precedent to the payment of money secured by a penal bond, the obligor has a right to insist upon a complete execution of the trust before he can be held liable on his bond.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY,

THIS was an action of debt on a penal bond, brought by the appellant, as administrator of the estate of George M. Rives, deceased, against Jacob Baptiste. The condition of the bond is as follows : " Whereas I, the said Baptiste, George M. Rives, deceased, T. L. Toulmin, and John K. Collins, became the sureties of William Magee as receiver in a suit in chancery, in which the trustees of the Bank of the United States of Pennsylvania were plaintiffs, and the heirs and representatives of Henry Hitchcock were defendants ; and said Magee has made default as such receiver, and the said William H. Rives, as administrator of said George M. Rives, has paid on account of such default the sum of $32,722 54, and, with a view to secure the same from said Magee, has taken his notes, with a mortgage on his personal and real estate, due as follows: the first, for the sum of $5,671, due the first of September, 1846, with interest from date, dated the first of September, 1845 ; the second, for the same amount, dated the same time, with interest from date, and due the first of September, 1847; the third, for the same amount, dated the same time, with interest from date, due Sept. 1848 ; the fourth, for the same amount, dated the same time, with interest from date, due Sept. 1849; the fifth, for the same amount, due at the same time, with interest from date ; the sixth, for the same amount, due at the same time, with interest from date : Now, in the event that said Magee shall fail to pay said notes, and the mortgage property prove insufficient to pay the same, and said Magee unable to do so, and said Rives unable to collect said notes of said Magee by law; then, should I, the said Jacob Baptiste, pay to said Rives, administrator as aforesaid, one-fourth of the ultimate amount or loss he may sustain by reason of his paying up the default as aforesaid, then this bond to be void," &c.

The defendant craved oyer of the bond and condition, and pleaded, 1st, performance ; 2d, that plaintiff had not exhausted the property conveyed by said Magee in mortgage, according to the terms and stipulations of the said bond, before the commencement of this suit; and, 3d, that said Magee has not been sued on said notes, and plaintiff has not ascertained that the same could not be collected by law, according to the stipulations of said bond.

The plaintiff replied as follows : "That said William

Magee, with his wife Mary, on the — day of September, 1845, at Mobile, made and delivered to said plaintiff their deed of mortgage, with power of sale, whereby said Magee and wife conveyed to said plaintiff certain real and personal property, in said deed described, to secure the payment of the said several sums of money mentioned in said writing obligatory ; that it was stipulated in said deed of mortgage, that if either of said notes should remain due for the space of ninety days after the maturity thereof, then, and in that case, each and all of said notes should forthwith be due and payable, notwithstanding some of them shall have a longer time to run before maturity upon their face, and the said plaintiff could forthwith commence suit, at law or in chancery, for the recovery of the whole or entire debt covered by said six promissory notes ; and it was further stipulated, that in the event said Magee should fail to pay any one of said notes for the space of ninety days from its maturity, or any part thereof, then said plaintiff might take possession of said real and personal estate, and expose the whole to sale at public auction, at the court-house in the city of Mobile, or on the premises, first giving twenty days' notice in some newspaper printed in Mobile, and from the proceeds of such sale, after paying the expenses thereof, the said plaintiff should pay himself all of said debt, and interest, and charges incident to closing the said business, and the residue, if any, should pay to said Magee or his successors ; and the plaintiff avers, that the first of said notes became due on the first of September, 1846, and remained due and payable for the space of ninety days after the maturity thereof ; and plaintiff avers that, in pursuance of the terms of said deed of mortgage, he proceeded to take possession of said property embraced in said deed, and sold the same according to the tenor of said deed, on the 18th day of January, 1847, and after paying the expenses of said sale, he received the sum of $11,221 18, to be applied to the payment of the aggregate sums of money mentioned in said notes ; and plaintiff further avers, that on the — day of —— he commenced his suit against said Magee to recover the aggregate amount of all said notes of said Magee, as he was authorized to do under the terms and stipulations contained in said deed of mortgage, in the Circuit Court of Mobile, and at the Spring term, 1848,

of said court, on the 24th day of May, 1848, being a day of said term, he obtained judgment against said Magee for the sum of $40,245 98, besides costs; and plaintiff further avers, that an execution was regularly issued on said judgment against said Magee, which was returned before the commencement of this suit ' no property found' out of which to make the same, in due course of law; and said plaintiff further avers, that all of said sums of money mentioned in said notes and deed of mortgage, and in said writing obligatory, have not been paid by said Magee, nor by said defendant, nor any part thereof, other than the said sum of money arising from said sale as aforesaid; all of which said plaintiff is ready to verify," &c.

By special leave of the court, the plaintiff also filed a second replication, in which he avers "that he, as the administrator of George M. Rives, deceased, and said defendant, together with T. L. Toulmin and John K. Collins, were bound as sureties for William Magee as receiver, as set forth in the condition of said writing obligatory, and being so bound, he did, on the — day of September, 1845, pay up the default made by said Magee, to-wit, the sum specified in the condition of said writing obligatory, in consideration of the execution and delivery to him of the deed of trust described in the first replication, the notes therein mentioned, and the said writing obligatory executed by said defendant; that the said deed of trust, and the notes therein described, and also the said writing obligatory, were all delivered to said plaintiff at the same time, to-wit, on the first day of September, 1845, and upon the delivery thereof, the said *delivery* (?) paid the default aforesaid, to-wit, the sum of $32,722 54; and the said plaintiff further avers, that said Magee made default in the payment of the first note specified in said deed of trust, and the same remained unpaid for more than ninety days, wherefore the said plaintiff advertised the whole of said property, both real and personal, for sale, according to the conditions and terms of said deed of trust, and on the — day of January, 1847, he did, at public auction at the court-house in Mobile, sell all the property, both real and personal, described in said deed of trust, except five slaves, three of which five had died before the day of sale, and whilst they were in the possession of said

Magee, and the two others (one of the value of $1,000, and one of the value of $600) after the sale were carried by said Magee to New Orleans, and there sold by him; and said plaintiff further avers, that the sum produced by the sale of all the property sold at the court-house in Mobile, added to the value of the said two slaves sold by Magee in New Orleans, amounted only to the sum of $12,831 18, which said sum has been applied towards the payment of said debt secured by said deed of trust, but there still remained a large balance due, to-wit, the sum of $25,000; and said plaintiff further avers, that by reason of the default in the payment of the said first note, described in said deed of trust, the entire debt secured by all of said notes described in said deed of trust became due; and further the said plaintiff says, that he afterwards commenced suit against said William Magee, in the Circuit Court of Mobile, to recover said balance, and at the Spring term of said court, A. D. 1848, he recovered a judgment against said Magee, for said balance, amounting to the sum of $41,245 98, upon which said judgment execution has been issued, and returned 'no property found,' by the sheriff of Mobile county; and said plaintiff further avers, that he is, and always has been, unable to collect said balance from said Magee by law, he being insolvent; and plaintiff further avers, that by reason of the premises aforesaid the condition of said writing obligatory has become broken, and the said defendant liable to pay said plaintiff the one-fourth part of said balance remaining unpaid after the application of all the money realized from the sale of all the property described in said deed of trust in manner aforesaid, which said one-fourth part amounts in the aggregate to the sum of $10,311 44; yet said defendant has not paid the same, nor any part thereof, though often requested, and this the plaintiff is ready to verify," &c.

The defendant took issue on the first replication, and demurred to the second, assigning as causes of demurrer: "1. It does not appear by the same but that Rives had the two slaves, mentioned therein as sold in New Orleans, in his possession at the time of the public sale, and could have executed his trust as to them in the manner prescribed, and does not show any excuse for not having executed his trust. 2. Because no

reason is assigned for permitting Magee to take said slaves to New Orleans, or for selling them there. 3. Because the plaintiff shows no excuse for not executing his trust, and no execution thereof, but shows a wilful default in this regard."

The court sustained the demurrer to the second replication, and on the issue joined on the first a verdict and judgment were rendered for the defendant. The sustaining of the demurrer to the second replication is now assigned for error.

E. S. DARGAN, for the appellant :

It may be admitted that the sale of the property of Magee, conveyed by the deed of trust, was a condition precedent to plaintiff's right to sue on the bond ; yet this admission will not exempt the defendant from liability, under the facts disclosed by the record. The defendant received the entire consideration, which was the payment by Rives of the entire debt for which they were both jointly bound. The first condition precedent to plaintiff's right to sue—that he must sue Magee to insolvency—has been strictly performed ; and the second—that he must sell all the property conveyed by the deed, and apply the proceeds to the debt for which they were jointly bound—has been performed in part, and the part unperformed is susceptible of complete compensation : all the negroes save two have been sold, and the value of those two could be (and was) definitely ascertained, and Rives charged with the amount. The rule established by all the authorities bearing on the case, is, that if the condition precedent is susceptible of division, and may be performed in part, and the part unperformed be capable of complete compensation, and the defendant has received the consideration of the covenant, he shall be held upon the covenants, to the extent, at least, of the part performed.—Boone v. Eyre, 1 H. Bla. 273, n. a ; 1 Saund. R. 320, note ; 10 East 295 ; 3 Watts 330 ; Hill v. Bishop, 2 Ala. 320.

But, independently of this view, the condition has been substantially performed, and this is sufficient. The substance of the condition must always be looked to, in determining whether it has been performed :—for instance, if the condition be to enfeoff A, and the land is conveyed by way of lease and release, this is sufficient; for the substance of the condi-

tion is, that A. shall obtain the title, and so that he gets the title, although the mode and means of performance are different from that pointed out in the covenant, the condition is performed. So, where the intent to be gathered from the contract is the substantial performance of an act, although the mode or means be pointed out, the party may recover upon a substantial performance of the act, otherwise than in the mode prescribed, leaving the other party to recoup his damages, if the departure from the mode prescribed is prejudicial to him.—Addison on Contracts, pp. 186 to 190. Indeed, to make the manner of performance of the substance of the condition, it must clearly appear that such was the intention of the parties. But, if we consider the nature of this contract, and the circumstances attending it, in connection with the language, the intention of the parties must have been the appropriation of the trust property to the debt, while the sale at the court-house was but the mode pointed out by which the substance of the condition was to be performed.—3 Met. 255 ; Chambers v. Jaynes, 4 Barr 39.

R. H. SMITH, *contra :*

The demurrer to the second replication was rightly sustained. The stipulations in the trust deed are part of the bond, as was held in this very case.—Rives v. Toulmin, 19 Ala. As all intendments are against the pleader, the meaning of the replication is, that Rives had possession of the two slaves not sold, and could have sold them as provided by the deed ; that no reason existed for not selling them ; that defendant gave no consent not to sell, and derived no benefit from the failure to sell, but that Rives, without any excuse, allowed Magee to take them to New Orleans ; that their value is $1600, which plaintiff will credit rather than be turned out of court.

The sale under the trust was a condition to be performed before defendant became a debtor at all : it was a condition precedent (1 Saund. Pl. & Ev., 122–5; 3 Ala. 330; 8 *ib.* 375; 9 *ib.* 320 ; 6 *ib.* 776 ; 4 *ib.* 336 ; 1 Porter 437 ; Minor's R. 414 ; 1 Ala. 153 ; 3 *ib.* 181 ; 7 Porter 133 ; *ib.* 508 ; Chit. Con. 663) ; and the time and place of sale were of the essence of the condition.—6 Sm. & M. 404 ; 19 Maine R. 147 ; 30 *ib.* 91.

But whether it was or not, plaintiff has not sold at all, but has allowed Magee to retain. He had no power to sell, except under and by virtue of the trust, and in the mode and manner therein prescribed. If he can thus act as to two of the slaves, why not as to three, four, or all ? why sell at all ? why not compute their value, deduct it from the debt, and sue for the balance ? It is plain that, if a public sale (or any sale, rather) of two can be dispensed with, that of all can be. The value of the two slaves is $1600 ; but suppose they had brought more than that sum at a public sale, can the defendant be cut down to their value, when by his contract he has a right to the larger sale price? The parties had a right to have the sale made in their own town, in order that they might run up the property, get bidders, ascertain and know the sales, calculate and pay the balance without cost. If plaintiff sustains a loss, it is by his own wrong, his own disregard of duty, and he must suffer the legitimate effects of it. He may yet go on, and execute the trust, and then sue ; this judgment will be no bar.

The position is assumed (strangely enough) that, because Rives has partly executed, defendant has been partly benefited, and therefore must pay as though there had been a full execution. Even if a change in the contract was for defendant's benefit, he is not bound by it unless he consents to it.— But how was this part execution a benefit to defendant?— Rives took the proceeds of sale ; each act of execution of the trust was a step tending, not to benefit defendant, but to bring a liability upon him. Therefore the cases cited by plaintiff's counsel are without application. One owes nothing, but may become a debtor by the happening of a contingency ; the approach of that contingency is called a benefit to him, and an argument is built thereon based on the assumption that he has received a partial benefit. Englishmen, in their pride, call their national debt a blessing. .

Plaintiff says, it is a substantial compliance. Unless he had a right or power to sell in some other mode than that prescribed in the trust, there has been no sale at all, and of course no actual or substantial compliance ; and, however ingenuity may twist the proposition, it comes to this : Can Rives recover without executing his trust, or showing an ex-.

cuse for the omission, and hold the defendant liable by simply offering, at the trial, to credit the value of the trust property.

It is also argued, that the thing to be done is susceptible of division, and therefore part performance takes the case out of the law of condition precedent. In the same sense, there may be a part performance of every condition precedent. If an overseer contract to serve for one year, his performance is made up of parts ; if one contract to build a house, his labor and materials consist of parts. But before any right to compensation arises, these parts must combine to produce a whole. So, in this case, each slave is a part of the whole ; but all are to be sold, and the entire sale gives a result upon which the liability arises, and until the whole is done there is no liability. Argument cannot illustrate the statement.

GOLDTHWAITE, J.—It is clear that in this case, unless the plaintiff has done every thing which devolved on him to do, in order to perfect the liability of the defendant on the bond sued on, no action can be maintained upon it. Now what are the conditions on which the defendant agreed to pay ? Magee was to make default ; the plaintiff to be unable to collect the debt out of him by law ; and the property conveyed by the trust deed to prove insufficient, on an execution of the trust, to pay the debt.—Rives v. Toulmin, 19 Ala. 388. Magee has made default, and has been sued to insolvency ; but the trust has not been fully executed, as the replication shows that a portion only of the property embraced by the deed has been sold under it, and that the value of the property which was not thus sold was $1600. If this last condition was a precedent one, then the rule is well settled, that no action can be maintained, unless it has been performed.— Duke of St. Albans v. Shore, 1 H. Bla. 271 ; Smith v. Wilson, 8 East 347 ; Glazebrook v. Woodrow, 8 T. R. 366 ; Kingston v. Preston, 2 Doug. 688 ; Bailey v. White, 3 Ala. 320 ; Jones v. Somerville, 1 Porter 437. We do not understand this rule to be denied ; but it is insisted for the appellant, that this condition is divisible, and may be performed in part,—that the part unperformed is capable of complete com-

pensation, and that the defendant, having received the consideration of the bond, which was the payment of the common debt by the plaintiff, shall be held upon the bond, at least to the extent of the part performed. We concede that, where covenants are mutual, and go to a part only of the consideration on both sides, and a partial performance is not inconsistent with the terms of the contract, and the part unperformed can be compensated, either by way of recoupment or damages, it cannot be insisted on as a condition precedent. The case establishing this doctrine is Boone v. Eyre, 1 H. Bla. 273, n. a, where the plaintiff conveyed to the defendant a plantation in the West Indies, in consideration of a sum certain, and an annuity for life of £160 per annum, and covenanted that he had a good title to the plantation, and was lawfully possessed of the negroes ; and the defendant covenanted, that, the plaintiff well and truly performing all and every thing on his part to be performed, he, the defendant, would pay the annuity. In an action for the non-payment of the annuity, it was held no defence, that the plaintiff was not lawfully possessed of the negroes : and Lord Mansfield said : " The distinction is very clear : where mutual covenants go to the whole consideration on both sides, there they are mutual conditions, the one precedent to the other ; but where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on the covenant, and shall not plead it as a condition precedent." This doctine has since been repeatedly recognized in the courts of Westminster (Duke of St. Albans v. Shore, *supra*; Campbell v. Jones, 6 T. R. 573 ; Havelock v. Geddes, 10 East 556) ; but we have found no case in which it has been applied, where the covenant clearly extends to the liability ; and in the case cited as establishing the doctrine, had the covenant contained a provision that the defendant should not be required to pay the annuity unless the plaintiff was lawfully possessed of all the slaves, there could, we apprehend, be but little question that the covenant would have been held to be a precedent one, for it would then have gone to the liability, or, in the language of Bosanquet, J., in Lucas v. Godwin, 3 Bing. N. C., "have been of the essence of the contract." See, also, Addison on Con., 187, 188. Here the stipulation of the

defendant is, in effect, that he is only to pay on sale of the property under the deed of trust; and the parties evidently intended this should be done, as the amount he is to pay is to be ascertained by a reference to the sale so made. By the express agreement of the parties, therefore, this condition must be regarded as one on which the *liability* of the defendant depends, and must be held as a condition precedent, the performance of which must be shown, to entitle the plaintiff, in a suit upon the bond, to recover anything.

But it is said, that if the execution of the trust was a condition precedent, the replication shows that it has been substantially performed. We cannot so consider it. Courts will not, it is true, require the performance of every minute particular of a condition, unless the full and exact performance is part of the essence of the contract; or, in other words, unless, upon a fair construction of the covenant, such appears to have been the clear intention of the parties.—Addison upon Con., 188. But here, it is evident, the parties contemplated a sale of all the property under the deed: that is their contract. They have made the liability of the defendant to depend upon it; and having done so, we cannot change it: our duty is limited to construing contracts, but we are not at liberty to make them; and when the plaintiff has agreed that the defendant should only be held liable upon a sale of all the property, it would be establishing a most unsafe and dangerous precedent, to say that he should be permitted to pay the value of a substantial portion of it, instead of doing that which he agreed to do, in order to make the defendant liable.

The judgment must be affirmed.