## NESBITT *vs.* McGEHEE.

1. When a contract under seal is materially varied by a subsequent valid contract, which is also under seal, a recovery cannot be had on a declaration which only sets out the first contract and its breach ; and if the declaration sets up both contracts, alleging an appropriate breach, a plea of performance of the obligations imposed by the original agreement, which is silent as to the additional obligations created by the second agreement, is defective on demurrer.

2. A contract under seal contained these provisions : "The said M. covenants and agrees to deliver to the said N., at the water's edge, at his steam-mills at Cedar Bluff, all the stocks for string timber for the Memphis Branch Railroad, agreeably to the said N.'s contract, made January 18th, with the engineer of said road"; the stocks to be of a specified size and quality, and " the timber to be delivered as fast as required for sawing', say one hundred stocks per week, more or less, as may be necessary. ͪ ͳ ͏ And the said N., on his part, covenants and agrees to pay the said M., when the above contract shall have been faithfully complied with, at the following rates, to-wit, forty-five cents per stock ; and that he will make his payments in the following manner—that is to say, on the twentieth day of every month during the progress of this contract, he will pay seventy-five per cent. of the relative value of such timber as may be delivered, until the whole of the timber herein contracted for shall have been delivered agreeably to contract, when the balance shall be forthwith paid to the said M.": *Held*, that the weekly delivery by M., at the specified place, from the date of the agreement until the next twentieth day of the month, of such a number of logs (not exceeding one hundred per week) of the specified size and quality, as was necessary to afford constant employment to N.'s steam-mills in sawing them during the usual working hours of each day of the week, was the first thing to be done under the contract—a condition precedent to N.'s liability to pay ; and that M.'s failure to perform that act, was a breach of his covenant, and instantly vested a right of action in N.

3. A cause of action accruing from a breach of covenant, cannot be discharged

by any act of the plaintiff, short of a release, or the acceptance of something in satisfaction of that cause of action.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JOHN E. MOORE.

COVENANT by Wilson Nesbitt against Nicholas McGehee, to recover damages for the defendant's breach of this contract :—

"Articles of agreement, made this 28th day of January, 1847, between Wilson Nesbitt, of the one part, and Nicholas McGehee, of the other part, *witnesseth*, That the said McGehee covenants and agrees to deliver to the said Nesbitt, at the water's edge, at his steam-mill at Cedar Bluff, all the stocks for string timber for the Memphis Branch Railroad, agreeably to said Nesbitt's contract, made January 18th, with the engineer of said road ; the stocks to be of heart pine, and each eighteen feet and a half long, sufficient to make each piece of string timber eighteen feet long, and six by seven inches square, heart pine ; the timber to be delivered as fast as required for sawing, say one hundred stocks per week, more or less, as may be necessary. And the said Nesbitt, on his part, covenants and agrees to pay the said McGehee, when the above contract shall have been faithfully complied with, at the following rates, to-wit, forty-five cents per stock ; and that he will make his payments in the following manner—that is to say, on the twentieth day of each month during the progress of said contract, he will pay seventy-five per cent. of the relative value of such timber as may be delivered, until the whole of the timber herein contracted for shall have been delivered agreeably to contract, when the balance shall be forthwith paid to the said McGehee. Witness our hands and seals, the day and year above written.

Signed, sealed and delivered in     N. McGehee [seal.]
  presence of Joel Thorp,
     G. B. Duval."           W. Nesbitt [seal.]"

"It is further agreed to by the parties to the within contract, that each log of timber, as before specified, shall make at least four pieces of string timber, six by seven inches, of heart pine, and that when a log will make more than four pieces, that the said Nesbitt shall pay unto the said McGehee

for each piece over and above the four pieces, in the same proportion as is given per log. Witness our hands and seals, this 18th February, 1847.

Executed in presence of ⟩     N. McGehee [seal.]
Joel Thorp."       ⟩     Wilson Nesbitt [seal.]"

The plaintiff declared on this entire contract, alleging as a breach the defendant's failure to deliver the stocks. The defendant demurred to the declaration, but his demurrer was overruled ; and he then pleaded several pleas, of which it is only necessary to notice the three following :

" 1. That he did deliver to the said plaintiff, at the water's edge, at his steam-mills at Cedar Bluff, all the stocks for string timber for the Memphis Branch Railroad, agreeably to said plaintiff's contract, made January 18th, with the engineer of said road ; the stocks of heart pine, and each eighteen feet and a half long, sufficient to make each piece of string timber eighteen feet long, and six by seven inches square, heart pine ; one hundred stocks per week, more or less, as was required for sawing, according to the form and effect of the said agreement in writing, and of the said covenant of the said defendant, by him in that behalf made as aforesaid ; and of this the said defendant puts himself upon the county," &c.

" 2. That he did, on the 20th day of ——, 1847, deliver to the said plaintiff, at the water's edge, at his steam-mills at Cedar Bluff, a large number of stocks for string timber for the Memphis Branch Railroad, agreeably to the said plaintiff's contract, made January 18th, with the engineer of said road, each eighteen feet and a half long, sufficient to make each piece of string timber eighteen feet long, and six by seven inches square, heart pine—to-wit, one hundred per week, more or less, as were required to saw, according to the form and effect of said agreement in writing, and of the said covenant of said defendant, by him in that behalf made as aforesaid ; and defendant avers, that said plaintiff did not, nor would, pay to said defendant, on the said 20th day of ——, 1847, nor at any time thence hitherto, seventy-five per cent. of the relative value of said timber so delivered, according to the form and effect of said agreement in writing, in said plaintiff's declaration mentioned, and of the said covenant of said plaintiff in that behalf made as aforesaid, but to pay

the same, or any part thereof, said plaintiff has failed and refused, and still fails and refuses, contrary to his said covenant," &c.

" 5. That he has well and truly kept and performed all and singular the covenants of him, the said defendant, by him in that behalf made as aforesaid, in said agreement in writing in said plaintiff's declaration mentioned, according to the form and effect of said agreement," &c.

A demurrer was interposed to the first and second pleas, which was overruled, and thereupon issue was joined· on them, as also on the fifth plea ; and a trial was had on these issues.

The plaintiff read to the jury the articles of agreement between himself and the defendant, and also the contract, therein referred to, between himself and the engineer of the railroad. He also introduced evidence, showing that he had made a contract with one E. E. Boyett, on the 21st April, 1847, for the superintendence of his mills and the sawing of the stocks which were· to be there delivered ; that his mills were capable of sawing six thousand feet per day, and, in consequence of defendant's failure to deliver the stocks as stipulated, his mills were idle for some length of time ; that defendant did not deliver any stocks until May 9th, 1847, and then delivered, in the course of one month and seventeen days, about two hundred and fifty stocks, of which only fifty were large enough to make four pieces of string timber of the specified size ; " but all of them," the bill of exceptions states, " were received and used by plaintiff in sawing string timber." There was proof, also, " conducing to show that defendant refused to deliver any more stocks, and assigned as a reason for so doing that he would lose money by it—that the stocks required were so large that he could not make anything by .furnishing them, and that he should not do it ; but there was a conflict of testimony on this point." Plaintiff further proved, that he had made a contract with the captain of a steamboat on the Coosa river for the transportation of the string timber to Rome, Georgia, and another contract for the laying of it along the line of the road ; that if defendant had at once entered on the performance of his contract, in February, 1847, and had delivered as much as one hundred stocks

per week, that the string timber might have been cut and delivered at Rome before the boating season was over, for that portion of the road which plaintiff had contracted to supply, and might have been laid along the line of the road agreeably to his contract with the engineer ; that by reason of defendant's failure to deliver said stocks pursuant to his contract, he had been compelled to pay out, for furnishing string timber to the road, increased cost of transportation, laying the timber along the line of the road, &c., a larger sum of money than he received from the road under his contract. There was proof, also, of the amount of damages plaintiff had sustained ; " but there was no proof," as the bill of exceptions states, " that plaintiff paid, or offered to pay, or that he was ready, willing, or able to pay defendant, for the stocks delivered."

The court charged the jury, at the request of defendant,—

" That if they believed from the evidence that the contract sued on was made on the 18th February, 1847, and that by its terms defendant was to deliver stocks to plaintiff, one hundred per week, more or less, as was required for sawing ; that plaintiff's contract with said Boyett, for the sawing of the string timber, was made on the 21st April, 1847 ; that defendant entered upon the performance of his contract on the 9th May, 1847, and plaintiff received the logs delivered, without objection, and used said stocks for string timber ; that defendant continued, at intervals, to deliver stocks during the term of one month and seventeen days, from the 9th May, 1847, and that plaintiff received and used the stocks so delivered,—in that case, plaintiff was bound to pay defendant, on the 20th May, 1847, for the stocks delivered up to that time, according to his contract, and was also bound to pay, on the 20th June, 1847, for all stocks previously delivered and not paid for according to his contract, seventy-five per cent. of the relative value of the stocks previously delivered ; and that if plaintiff failed to pay defendant, defendant might abandon his contract, and plaintiff cannot recover against him ;" and to this charge the plaintiff excepted.

The overruling of the demurrers to the first and second pleas, the charge given, and the refusal to give a charge requested, are now assigned for error.

D. W. BAINE and JAS. B. MARTIN, for the appellant:

1. The first plea was defective, and the demurrer to it should, therefore, have been sustained. It purports to be a plea of performance, and ought to answer the entire action. 1 Chitty's Pl. 523. But, while the declaration counts upon a breach of the entire contract (original and amended), the plea avers performance of the original contract only: the amended contract bound the defendant to deliver stocks which would each make four pieces of string timber of the required size, while the plea only alleges a performance by the delivery of logs sufficient to make each piece of string timber of the required size.

2. The second plea is demurrable for the same reason, and also because it does not aver that defendant was ready and willing to carry out the contract on his part. Nor can the plaintiff's failure to pay, as averred in that plea, be treated by defendant as a failure to perform a condition precedent.— Duke of St. Albans v. Shore, 1 H. Bla. 271; Boone v. Eyre, ib. 273, n. a; Campbell v. Jones, 6 Term R. 573; Havelock v. Geddes, 10 East's R. 556. The covenants being independent, the defendant is not released from his obligations until the contract is rescinded (Clay v. Dennis, 3 Ala. 375); and as the plea does not aver a rescission of the contract, it is for that reason also defective.

3. The charge of the court cannot be sustained. As no time was specified for the commencement of the delivery of the stocks, the law implies that it was to be commenced within a reasonable time (Drake v. Goree, 22 Ala. 409); and the 9th May was an unreasonable time to commence a contract made on the 18th February. This breach of contract on the part of defendant gave plaintiff the right to abandon it at once, and vested in him a cause of action which was not discharged by a subsequent delivery of a portion of the stocks, as there is no proof that they were received in satisfaction of the contract.

M. J. TURNLEY, contra, contended, 1st, that the demurrer to the pleas should have been visited on the declaration, which (he insisted) was fatally defective in several particulars; 2d, that the overruling of the demurrer, even if erroneous,

48

was not a reversible error, as the defendant had the benefit of the same defence under the fifth plea (Stein v. Ashby, 24 Ala. 521); and, 3d, that the charge of the court, under the pleadings and proof, was correct (1 Selden's R. 247).

RICE, J.—Where a contract under seal is materially varied, by a subsequent valid contract under seal, the plaintiff cannot recover under a declaration which sets forth the former contract only, and a breach of it. His safe course is, to set forth both contracts, and an appropriate breach. McVay v. Wheeler, 6 Porter's R. 201'; Barelli v. O'Conner, 6 Ala. 617.

The declaration in this case shows, that on the 28th day of January, 1847, the parties sealed and executed a certain agreement in writing, the terms of which are stated ; and that on the 18th day of February, 1847, they sealed and executed an additional agreement, in relation· to the subject-matter of the prior agreement, the terms of which are also stated. The declaration shows, that the right of the plaintiff to a recovery is founded on the breach by the defendant of his covenants shown in the original and additional agreements above mentioned. The additional agreement (among other things) imposed an additional duty or obligation upon the defendant, to-wit, " that each log of timber before specified (in the original agreement) should make at least four pieces of string timber, six by seven inches, of heart pine." The two agreements together constitute the contract of the parties.

No plea to such a declaration can be good, which confines itself to an averment of performance of the obligations imposed upon the defendant by the original agreement, and is silent as to the additional obligation imposed upon him by the additional agreement. Every such plea must be held insufficient, upon the principle, that a plea which undertakes to answer the whole declaration, but in truth answers only a part of it, is bad.

It is unnecessary to say anything more as to the first and second pleas, to which demurrers were overruled by the court below ; for it is clear, from what we have said, that the court below erred in overruling the demurrers to them.

The only other questions presented for our examination,

arise out of the charge given, and the refusal of the charge asked by the plaintiff; and to the discussion of these questions we now proceed.

The contract of the parties in this case is contained in the two aforesaid written agreements, both of which are set forth in the declaration and in the bill of exceptions. That contract fixes the order of time in which the acts of the parties were to be performed by them respectively : " The said McGehee covenants and agrees to deliver to the said Nesbitt, at the water's edge, at his steam-mills at Cedar Bluff, all the stocks for string timber for the Memphis Branch Railroad, agreeably to the said Nesbitt's contract, made January 18th, with the engineer of said road, the stocks to be of heart pine, and each eighteen and a half feet long, sufficient to make each piece of string timber eighteen feet long and six by seven inches square, heart pine ; the timber to be delivered as fast as required for sawing, say one hundred stocks per week, more or less, as may be necessary" ; and " each log of timber, as before specified, shall make at least four pieces of string timber, six by seven inches, of heart pine. And the said Nesbitt, on his part, covenants and agrees to pay the said McGehee, when the above contract shall have been faithfully complied with, at the following rates, to-wit, forty-five cents per stock ; and that he will make his payments in the following manner—that is to say, on the twentieth day of every month during the progress of this contract, he will pay seventy-five per cent. of the relative value of such timber as may be delivered, until the whole of the timber herein contracted for shall have been delivered agreeably to contract, when the balance shall be forthwith paid to the said McGehee"; and "when a log will make more than four pieces, the said Nesbitt shall pay unto the said McGehee for each piece over and above the four pieces, in the same proportion as is given per log."

The numerous decisions on the vexed question of what are, and what are not, dependent covenants, cannot be reconciled. They all agree in one particular—that is, in the recognition of the universal rule, that the intent of the parties, to be collected from the contract itself and from a common-sense view of it, must control the court in determining whether the

covenants are dependent or independent. "Their precedency (said Lord Mansfield) must depend on the order of time in which the intent of the transaction requires their performance."

The parties have an undoubted right, if they please, to make their covenants dependent or. independent *throughout*, or to make the covenants independent as to one thing, and dependent as to another. They have a right to mould their contracts so as to suit their mutual convenience and interests ; and when the courts can ascertain their meaning, they are so to construe the contract as to give effect to that meaning, provided the purpose be lawful. They must be held to have intended the performance of their respective acts, in the order of time indicated by their covenants.—Cunningham v. Morrell, 10 Johns. R. 203 ; Grant v. Johnson, 1 Selden's R. 247; Drake v. Goree, 22 Ala. 409 ; Rives v. Baptiste, 25 Ala. 382.

The application of the rules of law above stated to the aforesaid contract of the parties, makes it manifest, that at least one act was to be performed by McGehee before any liability against Nesbitt could accrue under the contract :— that act was, the delivery during each of the weeks intervening between the 18th day of February, 1847, and the 20th day of March, 1847, at the specified place, of such a number of logs of the specified size and description (not exceeding one hundred per week) as was necessary to afford constant employment to the steam-mills of Nesbitt in sawing them during the usual working hours of each day of said several weeks (Sundays excepted). If that act was performed by McGehee, then, if Nesbitt failed to pay him the seventy-five per cent. of the value of the logs so delivered, (estimated according to the measure of value prescribed in the contract,) on the 20th day of March, 1847, such non-payment entitled McGehee to abandon the contract, if he chose to abandon it. But, if McGehee failed to perform that act, such failure was a breach of his covenant, and instantly vested a right of action in Nesbitt. Nesbitt was under no obligation to employ a sawyer, until after McGehee commenced delivering the logs according to the contract ; and until McGehee commenced delivering logs, as required by the contract, it was immaterial to him whether Nesbitt had a sawyer, or whether Nesbitt's mills were actually at work ; for he (McGehee) could and

should have commenced the delivery as he had covenanted to do, whether the .mills were idle or at work, or whether Nesbitt had a sawyer or had not employed one. The delivery by McGehee, as herein above pointed out and described, was a *condition precedent,*—it was the first thing to be done under the contract.—Chitty on Cont. 635, 636 ; Lord v. Belknap, 1 Cushing's R. 279 ; Ennis v. O'Conner, 3 Harris & Johns. 163 ; Weaver v. Sessions, 6 Taunton's R. 155.

If a right of action vested in Nesbitt as aforesaid—that is, by the failure of McGehee to make the delivery aforesaid— then the rule applies, that the cause of action cannot be discharged by any act of the plaintiff, short of a release, or the acceptance of something in satisfaction of that cause of action. Leavitt v. Smith, 7 Ala. 182, and cases there cited ; Baylis v. Usher, 4 Moore & P. Rep. 791 ; Willoughby v. Bockhouse, 4 Dowl. & R. Rep. 539 ; Bowman v. Teall, 23 Wend. 309 ;. Spivey v. Morris, 18 Ala. 254.

Hence it is clear, that if McGehee failed to deliver any logs until the 9th day of May, 1847, or otherwise broke his covenant, he could neither bar this action, nor acquire a right to abandon the contract, by proving merely that on said last named day he entered on the performance of his contract, and continued at intervals to deliver stocks during the term of one month and seventeen days from that day ; and that plaintiff received them without objection, and used them for string timber, and that plaintiff from thence hitherto has failed to pay anything for them. Whether such evidence may not go in reduction of damages, we are not now required to decide ; but we hold, that it does not, *per se,* constitute a bar to this action.—Allen v. Greene, 19 Ala. 34.

We wish it noticed, that what we have above decided relates to *the contract itself, and the rules of construction applicable to that contract, as it came from the hands of the parties.* These rules of construction are sometimes confounded with the doctrine of waiver by matters *ex post facto.* As to this doctrine, we decide nothing at this time.—Grant v. Johnson, 1 Selden's R. 252 ; Lucas v. Godwin, 3 Bing. N. C. 737 ; Chitty on Cont. 634, 636 ; Wallis v. Long, 16 Ala. 738 ; Havelock v. Geddes, 10 East, 555 ; Story on Bail. § 441 ; Story on Cont. § 741.

We deem it unnecessary to give any particular examination to the charge asked and refused, or to express an opinion as to its correctness. The charge given was erroneous. For the errors of the court below in giving that charge, and in overruling the demurrers to the first and second pleas, its judgment is reversed, and the cause remanded.