# Westmoreland *v.* Porter.

## *Assumpsit.*

1. *Statute of frauds; when promise to answer for debt of another not within.*—A promise to pay the debt of another is not within the statute of frauds, where the promisor is interested in property on which the creditor has a lien for the payment of the debt, and, in consideration of the promise, the lien is relinquished, and its relinquishment enures to the promisor's benefit.

2. *Same ; forbearance to enforce debt not sufficient to take promise out of its influence.*—The mere forbearance by a creditor to enforce his debt,

[Westmoreland v. Porter.]

while a sufficient consideration to support a guaranty of the debt by another, is not sufficient to take the guaranty out of the influence of the statute of frauds.

3. *Same.*—Hence, an agreement in writing by which a merchant, having a lien on a crop grown on rented land for advances, subordinate to an unsatisfied lien for rent, acknowledges himself the tenant's surety for the rent, in consideration of a forbearance by the landlord to enforce his lien, which is not expressed, is void under the statute.

4. *Same ; when agreement not within.*—If, however, a part of the consideration of such agreement was a release by the landlord of a portion of the rent, and such release enured to the surety's benefit, this would take the agreement out of the influence of the statute, although not expressed in the writing.

5. *Rescission of executed contract ; consideration for.*—A contract which has been executed by one party, only leaving an obligation to pay on the other, can not be rescinded by mutual consent, without other consideration ; but its obligation can only be discharged by full payment, release, or accord and satisfaction.

APPEAL from Lawrence Circuit Court.

Tried before Hon. H. C. SPEAKE.

This was a suit by Theo. Westmoreland against R. B. Porter, to recover damages for the alleged breach of an agreement in writing executed by the defendant on 29th December, 1880, by which he "acknowledged" himself "security" for the payment to the plaintiff, within thirty days, of $650, as a balance due from one J. M. McGehee for the rent of plaintiff's plantation, in Lawrence county, for the year 1880 ; the complaint alleging the circumstances under which the agreement was made, and the consideration supporting it. It is admitted in the complaint that the defendant was entitled to a credit of $276.70, of date 1st July, 1881. The defendant pleaded, in short by consent, (1) "the general issue, with leave to give in evidence any special matter which would be a good defense, if well pleaded and proved ;" (2) "statute of frauds ;" (3) "failure of consideration ;" and (4) "no consideration for the instrument sued on." The cause was tried on issues joined on these pleas, the trial resulting in a verdict and judgment for the defendant.

The plaintiff proved on the trial that, on 1st October, 1879, he rented to J. M. McGehee a certain plantation in Lawrence county, known as the "Lightfoot plantation," for the year 1880, McGehee executing to him an instrument in writing, by which he promised to "pay" the plaintiff, on 15th November, 1880, twenty bales of cotton of a designated weight and classification, for the rent of said place for said year, and agreed "that the crop produced on said plantation is bound for the payment of said amount, for the rent thereof." The evidence introduced on his behalf further tended to show that, in December, 1880, McGehee owed the defendant $800 or $1000, for advances made by the latter to the former, to enable him to

[Westmoreland v. Porter.]

make a crop, for which he had a lien on the crop, "secondary
to the lien for rent;" that on 28th December, 1880, one Lane,
as attorney for the plaintiff, went to "Town Creek, in Law-
rence county, near which place the Lightfoot plantation is situ-
ated," for the purpose of collecting the amount which Mc-
Gehee owed the plaintiff for rent, "by attachment or other-
wise, as might seem best," he taking with him the instrument
executed to the plaintiff by McGehee; that at the time of his
arrival at Town Creek, there were five or six bales of cotton,
part of the crop grown on said plantation, at the depot for
shipment, and Lane notified the railroad agent that he had a
lien on it, and not to ship it; that, on Lane's arrival at Town
Creek, he saw the defendant, a[...] advised him of the purpose
of his visit, when the defendant old L[...] of his lien for ad-
vances, and insisted that if the [...]er s[...] t an attachment
against the crop, it would be so wasted [...] gathering, and so
consumed by costs, that he, defendant, would be unable to col-
lect anything on his debt; that thereupon McGehee was sent
for, and, after a conference between the three parties, "for the
purpose, on the part of McGehee and Porter, of making some
arrangement that would obviate the necessity of attaching the
crop, an agreement was reached between them, Porter, Mc-
Gehee and Lane, by which the value of the note for twenty
bales of cotton was fixed at $1050; that Porter, in the pres-
ence, and with the concurrence and agreement of McGehee,
[proposed] that if Lane, as plaintiff's attorney, would reduce
the note from $1050 to $850, McGehee would raise $200, the
estimated value of the cotton at the depot, on said cotton, and
would pay it on the note, thus reducing the amount still due
on the note to $650, and would turn over the crop to Porter,
McGehee consenting thereto, and forbear his right of attach-
ment, and give McGehee thirty days additional time on the
note, he, Porter, would become McGehee's security for the
payment of said balance of $650 within thirty days;" that
Lane, acting for the plaintiff, acceded to this proposition; made
a memorandum on the back of the instrument executed by
McGehee to the plaintiff, called a note by the parties, agreeing
"to receive $850, as payment for within note from J. M. Mc-
Gehee;" received from McGehee $200, the estimated value
of the cotton at the depot, and indorsed on said instrument a
credit therefor; forbore plaintiff's right of attachment, "and
gave McGehee thirty days further time to pay the note; and
turned over to Porter, with McGehee's consent and agreement,
the crop on the Lightfoot place, and McGehee's note for col-
lection to the defendant, Porter, who thereupon became Mc-
Gehee's surety for the payment of the balance of $650, and
evidenced this contract of suretyship by a paper-writing in the

[Westmoreland v. Porter.]

words and figures following, to-wit: 'Received of Theo. West-moreland a rent note for collection. By agreement said note was changed from ten bales of low middling cotton, and ten bales of good ordinary, to $850, which is to be received as rent for Westmoreland's place. I also acknowledge myself se-curity for the payment of $650, balance due on said note, said payment to be made in full within thirty days from date.

(Signed)　　　R. B. Porter.'"

"December 29th, 1880."

This is the instrument sued on. It was also shown that Mc-Gehee was, and had been, "since and including the winter of 1880–81," insolvent.

The defendant was examined as a witness in his own behalf, and, after testifying touching the advances made by him to McGehee, further testified that "he agreed to become Mc-Gehee's surety for the balance of $650, to prevent the crop from being consumed in costs, etc., of attachment, but that there was no reduction in the note of McGehee from $1050 to $850, but the latter amount was the estimated value of the note; that Lane turned over the crop to him under said agree-ment, and delivered to him McGehee's note, but that the indorsement now on it about changing note to $850 was not on the note when he received it;" that he afterwards returned the note to the plaintiff; that in latter part of January, 1881, having been unable to "make headway" gathering the crop on account of the weather, he notified the plaintiff to come down and make his money; and that plaintiff came to Town Creek in response to the notification, when he had a conversation with him, plaintiff. Defendant was then asked by his counsel, "whether or not, in this conversation, the plaintiff released him, defendant, from his contract as McGehee's surety, or whether it was then and there mutually agreed between plaintiff and defendant that said contract should be rescinded." To this question the plaintiff objected, but his objection was overruled, and he excepted. To this question the witness then answered, "that, in this conversation, he told Westmoreland, the plaintiff, that he had been unable to gather the crop; that he was cer-tain he, witness, would not get any thing out of it on his debt, and that he wanted plaintiff to release him from his contract, as McGehee's surety, for the payment of $650, and make the money out of the crop; that there was enough crop to pay the rent; and that, thereupon, plaintiff said he would release wit-ness, and rescind the contract of suretyship, and go on McGehee for the original contract for twenty bales of cotton." To this answer the plaintiff objected, but his objection was overruled, and he excepted. It was then shown by the testimony of the witness that McGehee was not present at the conversa-

tion, and was not consulted as to the release or the rescission of the said contract; and that the agreement to rescind "was without the payment to the plaintiff of any money or thing of value therefor, and that the plaintiff received nothing for relinquishing his rights under the contract." Thereupon the plaintiff moved to exclude from the jury the defendant's testimony touching the "release or rescission;" but the court overruled the motion, and to this ruling the plaintiff excepted. The plaintiff also reserved exceptions to the admission in evidence, against his objection, at defendant's instance, declarations made by the plaintiff to third parties, tending to show that he had released the defendant from liability on his said contract of suretyship, and had rescinded the same. It was also shown on behalf of the defendant that on 27th January, 1881, the plaintiff sued out an attachment against McGehee, to recover $850, for the rent of said place for the year 1880; that the attachment was levied on McGehee's crop raised on said place during said year; and from the sale of the crop levied on, the plaintiff realized $276.70. In rebuttal, the plaintiff introduced evidence tending to corroborate the evidence already introduced by him, and tending to show that he had never released the defendant from, and had never rescinded said contract of suretyship. The foregoing is the substance of the evidence introduced on the trial of said cause, material to the questions decided by this court.

The plaintiff reserved numerous exceptions to portions of the general charge, to charges given at defendant's request, and to the refusal of the court to give charges requested by the plaintiff; but as the only questions raised by these exceptions and passed on by this court are, (1) whether the contract of suretyship was within the statute of frauds, and (2) whether there had been a valid rescission of that contract, or a valid release of the defendant from liability thereon, it is not deemed necessary to further extend this report by setting out the charges to which the exceptions relate. The rulings on the admissibility of evidence, above noted, and in charging the jury are here assigned as error.

McCLELLAN & McCLELLAN and E. H. FOSTER, for appellant. (1) The contract sued on was an *executed* contract. While an *executory* contract may be avoided by mutual consent to a rescission, without any extraneous consideration, an *executed* contract can not be *rescinded* at all. To avoid an executed contract, there must be, in substance, a *release ;* and a release must, in all cases, be supported by a valuable consideration, extraneous to the contract itself. This point elaborately discussed, with citation of following authorities : *Robinson v. Bullock*, 66 Ala.

[Westmoreland v. Porter.]

554; *Nesbitt v. McGehee*, 26 Ala. 748; *Hunt v. Barfield*, 19 Ala. 117; *Walker v. Greene*, 22 Ala. 679 ; Add. on Con. 1072, 1074, 1110; 54 Ala. 127; 7 Ala. 182; 18 Ala. 254; 21 Ala. 424; 15 La. 520; 9 Mass. 78; 15 Mo. 315; 42 Pa. St. 165; 4 Stew. & Port. 192; 17 Johns. (N. Y.) 340.   (2) The contract was not within the statute of frauds.   See 6 Ala. 694; 19 Ala. 100; 20 Ala. 309 ; 21 Ala. 721; 54 Ala. 122; 1 Brick. Dig. p. 386, § 169 ; 46 Ala. 45.

W. P. CHITWOOD, *contra*.   (1) The contract sued on was rescinded by mutual consent.   This proposition discussed at length, with citation of following authorities: 2 Pars. on Con. (2 Ed.) 190–1; 1 *Ib.* 391 ; 1 Brick. Dig. p. 394, § 233; *Glover v. McGilvray*, 63 Ala. 508 ; *Cooper v. McIlwain*, 58 Ala. 296 ; *Burkham v. Mastin*, 54 Ala. 122.   (2) The contract was within the statute of frauds, and void.—Code, 1876, § 2121; *Rigby v. Norwood*, 34 Ala. 129.

SOMERVILLE, J.—The agreement sued on purports on its face to be one of mere suretyship on the part of the defendant, Porter, in which he obligates himself to pay the plaintiff an antecedent debt of six hundred and fifty dollars, due to the plaintiff by one McGehee.   The agreement itself is signed by the defendant alone, and does not express any consideration.   One of the questions arising in the case is, whether this agreement is void within the influence of the statute of frauds, as " a *special* promise to answer for the debt, default or miscarriage of *another*."   It is required that agreements of this class shall not only be in writing and subscribed by the party to be charged, but that the written note or memorandum shall express the consideration.—Code, 1876, § 2121 ; *Rigby v. Norwood*, 34 Ala. 129 ; *Horton v. Wollner*, 71 Ala. 452.

There is an important class of cases, now fully recognized by all the authorities as not falling within the statute, which in *mere form* appear to be promises to answer for the debt of *another*, but which are, in reality and legal contemplation, promises to pay the debt of the *promisor* himself, and which would be binding upon him as a verbal obligation independently of any writing.   This court has followed the line of decisions in this country which bring within this class all promises ostensibly to pay the debt of another, which constitute an original undertaking, based on a new and independent consideration, whether of benefit or detriment, moving between the newly contracting parties.—*Thornton v. Williams*, 71 Ala. 555 ; *Lehman v. Levy*, 69 Ala. 48 ; *Dunbar v. Smith*, 66 Ala. 490 ; *Burkham v. Mastin*, 54 Ala. 122 ; 2 Brick. Dig. p. 31, § 234, and cases cited.   Our rulings on this point follow the doctrine

announced in *Leonard v. Vredenburg*, 8 John. (N. Y.) 29, which, however, in its broadest scope, seems not to be the prevailing rule in this country.—Browne on Stat. Fr. §§ 207, 212; Validity Verb. Agr. (Throop), § 613. We do not desire, at this late day, to disturb the authority of these numerous adjudications.

None of the courts raise any controversy about those cases where the original debtor is discharged and the debt released, and a new debt and debtor substituted in their stead by a contract in the nature of novation. This class of cases is universally excepted from the influence of the statute of frauds. *Thornton v. Guice*, 73 Ala. 321; *Underwood v. Lovelace*, 61 Ala. 155; Browne on St. Fr. § 193.

The class which we are now discussing is of another kind than the last mentioned. It embraces agreements which are in form mere promises of guaranty or suretyship, the original debtor not being discharged or released. The essential and real function of such new agreement, however, is to pay a new debt contracted by the promisor upon a new consideration of benefit to himself and moving from the promisee, and although this becomes his own debt, he agrees to discharge it by paying a debt due by another, which is a mere incident of the transaction. "The substance of the transaction is undertaking to pay his own debt in a particular way."—Browne on Stat. Frauds, §§ 214a, 212; *Blount v. Hawkins*, 19 Ala. 100; *Dunbar v. Smith*, 66 Ala. 490. "The debt of another," as said in *Wolff v. Koppell*, 5 Hill (N. Y.), 458, "comes in incidentally as a measure of damages." And in such cases, the whole transaction, viewed as a new and independent contract, must be of such a character that it would support a promise by the defendant to the plaintiff to pay the same sum of money without reference to the existence of any debt from another, or a third person. *Chandler v. Davidson*, 6 Blackf. 367; Browne on Stat. Fr. § 212, and note 1, § 214a; *Emerson v. Slater*, 22 How. (U. S.) 28; 3 Addison's Contr. §§ 1111–1112.

A common illustration of this general class is found in cases where the defendant, or party sought to be charged, has received *property or funds placed in his hands*, and belonging to the original debtor, which he holds in a sort of *trust* capacity, and from which he has promised to pay the original debt.—Browne Stat. Fr. §§ 214e, 209 et seq.; *Lee v. Fontaine*, 10 Ala. 755; Throop on Verbal Agr. § 584, et seq.; *Fullam v. Adams*, 37 Vt. 391.

Still another illustration is found in cases where a creditor has *a lien* on his debtor's property, and a third person, having a subordinate lien, or other interest in the same property, promises the creditor to pay the debt in consideration of the relinquish-

ment of the lien, which thus enures to his, the promisor's, benefit. These cases very clearly are promises to pay the promisor's own debt, and not mere guaranties of the debt of another.—3 Parsons' Contr. 25 ; Browne on Stat. Fr. §§ 214c, 214e. .

The rule governing this particular class of cases is thus expressed in a recent treatise where the authorities are all reviewed with discrimination and ability. "A promise to pay the debt of another," observes this author, " is not within the statute, if its consideration was the abandonment *to the promisor* of a security for the payment of the debt, consisting of *a lien* upon, or *interest* in property, to which the promisor then had a subordinate title."—Validity Verb. Agreements (Throop), § 571 *et seq.* The old rule was that a verbal promise to pay another's debt would be supported by a mere surrender of a lien on the property of the original debtor, whether made for his benefit, or that of the new promisor. Perhaps a case of this kind would come within the rule settled by our own decisions. But the great current of modern authority clearly sustains the view, that the new promisor must have *an interest* of some kind in the property to which the lien attached, so that its surrender will enure to his benefit. He thus becomes the *purchaser* of the lien, or of the interest of the promisee in the property thus encumbered at a price measured by the amount of the original debt, which he agrees to pay. This precise point, however, as to the person in whose favor the lien is surrendered, we need not decide, contenting ourselves with a citation of some of the authorities bearing on the question.—Browne on Stat. Frauds, §§ 214c, 224d ; Validity Verb. Agr. (Throop) §§ 594, 595, *et seq.,* 603 ; *Nelson v. Boynton,* 44 Mass. (3 Metc.) 396 ; *Dexter v. Blanchard,* 93 Mass. (11 Allen) 365 ; *Mallory v. Gillett,* 21 N. Y. 412 ; *Brown v. Weber,* 38 N. Y. 187 ; *Landis v. Royer,* 59 Penn. 95 ; *Corkins v. Collins,* 16 Mich. 478 ; *Dunbar v. Smith,* 66 Ala. 490.

Whatever may be the correct principle as to this point, there can be no doubt of the proposition, that where the promisor *is* interested in the property, and the relinquishment of the lien *does* enure to his benefit, the promise does not come within the statute of frauds, and not only need not express the consideration if in writing, but need not be in writing at all.

The agreement here sued on is, as we have said, in form a guaranty, or promise of suretyship. There are but two facts which can be urged, with any degree of force, as constituting a consideration for it. The first is the forbearance of the plaintiff to enforce his demand by the levy of an attachment on McGehee's crops, whether for a definite or indefinite period of time. The second is the alleged relinquishment of *two hundred dollars* of the original debt of McGehee, which enured to

[Westmoreland v. Porter.]

the benefit of the defendant *pro tanto*, he having a second lien on the same crops for advances, subordinate only to that of the plaintiff which was for rent.   It is not contended, nor does the evidence tend to show that the lien of the landlord was otherwise waived or surrendered.

While the forbearance of a creditor to enforce his demand is undoubtedly a sufficient consideration for the guaranty of the debt by another, yet it is precisely one of that class of considerations which is required by the statute to be expressed in the written agreement of guaranty, and is uniformly held not to take the defendant's promise out of the influence of the statute.—*Musick v. Musick*, 7 Mo. 495 ; *Hilton v. Dinsmore*, 21 Me. 410; Browne Stat. Fr. § 190, *note* 2, and cases cited.   The agreement itself expressing no consideration, it clearly came within the statute of frauds, and was, therefore, void, unless the jury believed that there was a release of some portion of the original rent debt due by McGehee, which, if released at all, it is not denied, enured to the benefit of the defendant.   It is only in the latter aspect that it can be properly regarded as an agreement by the promisor to pay his own debt, and, therefore, not within the statute, or as supported by a valid consideration.

We discover no error in the charge of the court, or any of its rulings, touching this branch of the case, which, at least, was prejudicial to the appellant.

It was further insisted by the defendant in the court below that the contract or agreement sued on was *released* or *rescinded* by mutual agreement of the defendant and the plaintiff.   The evidence tends to show that this was agreed to be done by a mere declaration of the parties, without any consideration whatever moving from the promisor to the promisee.   It is unnecessary that we should enter into any discussion as to the circumstances under which contracts may be rescinded or modified by mutual consent, without other consideration.   The cases are numerous in which the general rule on this subject has been stated.—*Cooper v. McIlwain*, 58 Ala. 296 ; *Burkham v. Mastin*, 54 Ala. 122 ; 1 Brick. Dig. p. 394, § 233; Bishop on Contr. §§ 665–672.

It is enough to say that if the contract has been performed, or executed on one side, and only money remains to be paid on the other, the case is manifestly like that of any other debt, and can only be discharged in like manner.—Bishop on Contr. § 672. It is a fundamental principle of our system of jurisprudence, that " an agreement to abandon a claim, unless there be a consideration shown, is a mere *nudum pactum*."—1 Addison on Contr. § 363.   If the present contract can be sustained as valid, so far as the evidence shows, it must be upon the theory of a

[Adams v. Phillips, Ex'rx.]

purchase by the defendant of a certain interest from the plaintiff in the crops of his tenant, McGehee. This was executed by a delivery. There can, therefore, be no essential or sound distinction between this case, and the ordinary one of a contract for the sale of goods, where the goods have been sold and delivered. In such cases it is well settled that a naked agreement that the contract be rescinded or annulled will not discharge or release the purchaser from his liability to pay the purchase-money.—*Edwards v. Chapman,* 1 M. & W. 231 ; 1 Add. Contr. (Amer Ed.) 1878, § 363. This can only be done by full payment, release, or accord and satisfaction.—*Nesbitt v. McGehee,* 26 Ala. 748; *Holloway v. Talbot,* 70 Ala. 389.

In this view of the case, it is immaterial whether McGehee was legally or in fact a party to the agreement sued on or not. The evidence did not tend to show any rescission or release of the debt due the plaintiff, the alleged agreement to rescind being a mere *nudum pactum,* without binding force on the plaintiff, because unsupported by any consideration. The court erred in its rulings on this branch of the case, and the judgment must be reversed and the cause remanded.